EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

The GREAT ATLANTIC AND PACIFIC TEA COMPANY, Defendant.

No. C 77–586.

United States District Court,
N.D. Ohio, W.D.

June 28, 1985.

Elliott V. Porter, E.E.O.C., Cleveland, Ohio, for plaintiff.

Robert Hartland, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., Thomas W. Palmer, Marshall & Melhorn, Toledo, Ohio, for defendant.

## OPINION AND ORDER

DON J. YOUNG, Senior District Judge.

This action arises out of the closing of five warehouse operations of defendant, the Great Atlantic and Pacific Tea Company ["A & P"]. Under the terms of collective bargaining agreements with the unions

representing the employees at these warehouses, some, but not all, of the employees received severance pay upon termination of the operations. Plaintiff, the Equal Employment Opportunities Commission ["EEOC"], claims that the 89 employees who did not receive severance pay were discriminated against because of their age, in violation of the provisions of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* ["ADEA"]. This Court has jurisdiction pursuant to Section 7(b) of the ADEA, 29 U.S.C. § 626(b) and Section 17 of the Fair Labor Standards Act of 1938, as amended [FLSA], 29 U.S.C. § 201 *et seq.*

Attempts to resolve the matter by conciliation were unsuccessful, and this action was commenced. The parties filed cross-motions for summary judgment. These motions were overruled because there were disputes of fact involved.

Thereafter, the matter came on for trial to the Court, sitting without a jury. It was submitted upon the testimony at the trial, and elaborate stipulations of facts, and was argued by briefs. Each party filed a brief, a reply brief, and a supplemental brief. This Opinion will serve as the Court's findings of fact and conclusions of law. Fed.R. Civ.P. 52(a).[1]

Prior to reaching the merits of the cause *sub judice*, the Court first must address the defendant's contention that some of the claims asserted by plaintiff EEOC are time-barred. Normally, an action for unpaid wages or compensation brought pursuant to the ADEA is subject to a two year statute of limitations. If a "willful" violation of the statute is proven, however, the limitations period is expanded to three years. *See* § 6 of the Portal to Portal Pay Act of 1947, 29 U.S.C. § 255(a) (incorporat-

ed into the ADEA by 7(e), 29 U.S.C. § 626(e)).

Defendant A & P first contends that, in the event a violation of the ADEA is found, there is no proof of defendant's intent to violate the statute or that a violation was "willful." It asserts, therefore, that this action is subject to the two year statute of limitations and that any claims arising out of the May 24, 1975 closings of the Buffalo and Syracuse warehouses, which occurred more than two years prior to the November 7, 1977 filing of this suit, are time-barred. Plaintiff EEOC, on the other hand, maintains that the three year limitations period applies, asserting that the defendant A & P willfully violated the ADEA when it denied severance pay to employees over the age of 55.

Divergent views have emerged as courts have wrestled with the appropriate definition of "willful" under the ADEA or the FLSA.[2] In one line of cases, courts have subscribed to the view that, for statute of limitations purposes, a violation is willful if the "employer knew or suspected that his actions might violate the [ADEA] [or] [s]tated more simply ... [d]id the employer know the [ADEA] was in the picture?" *Coleman v. Jiffy June Farms, Inc.,* 458 F.2d 1139, 1142 (5th Cir.1971), *cert. denied,* 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972); *accord Usery v. Godwin Hardware, Inc.,* 426 F.Supp. 1243, 1267 (W.D. Mich.1976) (violation willful where knowing, as opposed to negligent or accidental, and "committed with at least a general awareness that the requirements of the law were in the picture"). *See also E.E.O.C. v. Central Kansas Medical Center,* 705 F.2d 1270, 1274 (10th Cir.1983) (willful violation where "employer was or should have been

---

1. At the close of plaintiff's case in chief, the defendant moved for a directed verdict in its favor. The Court reserved ruling on the motion. It does not appear that these motions were renewed at the close of all of the evidence, but in any event, if the evidence is viewed in the light most favorable to the plaintiff, against whom the motions are directed, *Bellemy v. Bradley,* 729 F.2d 416, 418 (6th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 156, 83 L.Ed.2d 93

(1984); *Newby v. Serviss,* 590 F.Supp. 591, 595 (D.Mich.1984), it is clear that plaintiff would be entitled to prevail. The motion therefore will be overruled.

2. Since the ADEA incorporates many procedural provisions of the FLSA, many age discrimination decisions rely on cases which have interpreted these provisions under the FLSA.

cognizant of an appreciable possibility that the employees involved were covered by the statutory provisions"); *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 472 (D.C.Cir.1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978).

Other courts have adopted a narrower approach, requiring that to be "willful," a violation must be "deliberate, voluntary, and intentional." *Marshall v. J.C. Penney Co.*, 464 F.Supp. 1166, 1194 (N.D.Ohio 1979).[3] As explained by one court, this standard distinguishes willful violations from those that merely are accidental and "is used to characterize conduct marked by careless disregard whether or not one has the right so to act." *Boll v. Federal Reserve Bank of St. Louis*, 365 F.Supp. 637, 648–49 (E.D.Mo.1973), *aff'd*, 497 F.2d 335 (1974).

■ Even if this Court applies the more stringent view of willfulness, there is ample evidence, as detailed below in this Opinion, to support a finding that the defendant's denial of severance pay to its employees age 55 and over was "deliberate, voluntary, and intentional." *Marshall*, 464 F.Supp. at 1194. At best, the defendant negotiated this plan in "careless disregard whether or not [it had] the right so to act." *Boll*, 365 F.Supp. at 649. The three year statute of limitations applies to this action and all claims asserted, therefore, are timely filed.

The statutory predicate for this suit was enacted in order "to promote the employment of older workers based on their abili-

ty rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employees and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(a). To this end, Section 4(a)(1) of the ADEA provides, in pertinent part, that:

It shall be unlawful for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

29 U.S.C. § 623(a)(1). *See Trans World Airlines, Inc. v. Thurston*, —— U.S. ——, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985); *Lorillard v. Pons*, 434 U.S. 575, 577, 98 S.Ct. 866, 868, 55 L.Ed.2d 40 (1978) (ADEA "broadly prohibits arbitrary discrimination in the workplace based on age"). This protection extends to individuals who are between forty and seventy years of age. 29 U.S.C. § 631(a) (as amended, 1978).

■ To prevail on a claim under the ADEA, the plaintiff must first establish a *prima facie* case of age discrimination either by the use of the criteria set forth in *McDonnell-Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) in the context of a Title VII discrimination case or by the use of statistical information or direct or circumstantial evidence. *Grubb v. W.A. Foote Memorial Hosp.*, 741 F.2d 1486, 1498 (6th Cir.1984); *Blackwell v. Sun Elec. Corp.*, 696 F.2d 1176, 1180 (6th Cir.1983). The Sixth Circuit Court of Appeals has made it clear, however, that it eschews rigid application of the Title VII

---

**3.** In addition to the importance of determining a willful violation for statute of limitations purposes under the ADEA, it also can be critical to the determination of whether or not the victim of age discrimination can recover liquidated damages. *See* 29 U.S.C. § 626(b). In *Blackwell v. Sun Elec. Corp.*, 696 F.2d 1176 (6th Cir.1983), the Sixth Circuit Court of Appeals defined "willfulness" for purposes of the liquidated damages provision as requiring a showing that

the employer's actions were voluntary and intentional. The employer is not necessarily shielded from liability because he is aware of the "implications of his actions under the Act." Alternately, the plaintiff may receive liquidated damages if he shows that the employer was reckless in not knowing that his

actions were governed by the ADEA or that the employer acted in reckless disregard of whether his actions were covered by the ADEA.

*Id.* at 1184. The court concluded by stating that the focus should remain on "whether the employer deliberately, intentionally and knowingly discharged the employee because of his age." *Id.* It is not clear, however, whether or not this "willfulness" standard for determining liquidated damages is identical to that needed for purposes of determining the appropriate standard of limitations. *Trans World Airlines, Inc. v. Thurston*, —— U.S. ——, 105 S.Ct. 613, 625 n. 21, 83 L.Ed.2d 523 (1985) (referring to a split among the various Courts of Appeal over this question).

guidelines in an age discrimination suit and employs instead a flexible case-by-case approach to the establishment of a *prima facie* case under the ADEA. *West v. Fred Wright Constr. Co.*, 756 F.2d 31, 33 (6th Cir.1985); *Grubb*, 741 F.2d at 1497; *Blackwell* at 1180. If a *prima facie* case is established, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for his decision. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *Blackwell*, 696 F.2d at 1179. The ultimate burden of persuasion, however, remains at all times with the plaintiff. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095; *Blackwell*, 696 F.2d at 1180.

■ Notwithstanding the questions of proof, the ultimate issue under the ADEA is whether age was a determining factor in an employment decision. *Blackwell*, 696 F.2d at 1180–81; *Ackerman v. Diamond Shamrock*, 670 F.2d 66, 70 (6th Cir.1982); *Laugesen v. Anaconda*, 510 F.2d 307, 317 (6th Cir.1975). Stated differently, the plaintiff is "entitled to recover if one such factor was his age and if in fact it made a difference...." *Laugesen*, 510 F.2d at 317.

■ Not every employment decision that impacts adversely on older employees is a violation of the ADEA, however. *See Mastie v. Great Lakes Steel Corp.*, 424 F.Supp. 1299, 1307 (E.D.Mich.1976) ("not every personnel decision by an employer which results in differential treatment of individuals in the protected class is a violation of the [ADEA]"). Recognizing this fact, the statute provides several defenses which may be available to employers to make permissible actions which otherwise would be prohibited. Pertinent to this cause is Section 4(f)(1) which permits differentiation in treatment when it is based on "reasonable factors other than age," 29 U.S.C. § 623(f)(1), and Section 4(f)(2) which provides that it shall not be unlawful for an

employer "to observe the terms of a bona fide ... employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter...." 29 U.S.C. § 623(f)(2).

The questions presented in this cause are narrow. Plaintiff EEOC contends essentially that the defendant A & P's plan, whereby severance pay was denied to those employees eligible for early retirement, discriminates on the basis of age. The defendant, on the other hand, argues first that the plaintiff has not met its burden of showing that the severance pay plan made a distinction "because of age." It further contends that, even if such a distinction were made, it was permissible under either of the above-mentioned statutory defenses.

Although the basic evidentiary facts are relatively simple, and not particularly in conflict, the factual conclusions to be drawn from them are not at all simple, and are very much disputed. Part of this complexity is due to the fact that the defendant's pension plan is involved in the dispute. Like all pension plans, there are questions of rating of pension rights, the effects of early retirement, who gets pensions, and when, and who doesn't get pensions, and why. Since the days of the psalmist, the length of any particular person's life has been recognized as an unknown and unknowable quantity. Mortality tables make it possible to set up pension plans which are financially sound for a large group of pensioners, but they cannot predict what will be most advantageous for any one pensioner contemplating retirement.

Simply stated, five warehouse operations of the A & P, located in Ohio and New York, were closed down during 1975 and 1976[4] due to a general business decline and the ensuing national reorganization of the defendant. Termination of these operations brought into play severance pay pro-

---

**4.** The five facilities were located in Buffalo, Syracuse and Albany, New York and Bloomdale and Columbus, Ohio. The closing dates of the operations occurred, respectively, on: May 24, 1975; May 24, 1975; February 28, 1976, May 21, 1976; and June 5, 1976. Defendant's Motion for Partial Summary Judgment, at 3 n. 4.

visions which had been negotiated through collective bargaining between the A & P and the five local unions.

The issue in this case arises because all of the provisions in question denied severance pay to any employee who was eligible for early retirement under the defendant's pension plan. Normally, an employee could retire with the full benefits to which he was entitled upon reaching the age of sixty-five years. The pension plan then in effect provided also that an employee with vested pension rights [5] could take early retirement at any time after he reached fifty-five years of age. If the latter option were chosen, however, the amount of pension was reduced by five percent for each year under sixty-five to reflect the longer period during which the pension benefits would be paid. Thus, an employee retiring at fifty-five years of age would receive only half the amount of pension payable upon retirement at age sixty-five. Once an employee's pension rights had vested, it was not necessary to continue in the employ of the company until retirement in order to collect a pension at retirement age. The amount of the pension depends upon the length of employment, but once vested the employee would always be entitled to a maximum pension based upon earnings.

Obviously, an employee with vested pension rights might not wish to take an early retirement at a reduced pension. Innumerable factors in any particular case would influence this decision. There can be no doubt, however, that the right to make the decision is, basically, that of the employee. The employer might be able to persuade the employee to make a particular decision, but should not, and generally does not, have the right to make the decision for him.

■ In this case, however, the evidence leaves no doubt that many of the defendant's employees—those who were over fifty-five years of age and eligible for early retirement under the defendant's pension plan—were given no choice and thus were deprived of this right. These "early retirees," of course, could take the risk of waiting and defer receipt of their pension until they reached the normal retirement age of sixty-five in order that their monthly pension allotment not be reduced. Choosing this option, however, meant no immediate income for these employees. Notwithstanding the obvious financial hardship under either option, they also were deprived of the severance pay, designed to offset such difficulties, which younger employees were given. There can be no doubt that the age of these employees was a factor in determining whether or not they received severance pay, and that it did make a difference. *Laugesen v. Anaconda,* 510 F.2d 307, 317 (6th Cir.1975). *See E.E.O.C. v. Borden's, Inc.,* 724 F.2d 1390, 1393 (9th Cir.1984) (court found a violation of the ADEA where "[a]ge was a 'but for' cause or necessary condition for the denial of severance pay to Borden's retireable employees, since only employees 55 or older were eligible for retirement").

The defendant, in support of its argument that its policy did not discriminate on the basis of age, makes much of the fact that a small number of employees who were over fifty-five years of age did receive severance pay.[6] The other side of this coin is that employees with vested pension rights who were under the age of fifty-five years of age at the dates of warehouse closings could get both severance pay and retirement pay. When the totality of the circumstances is examined, the discriminatory nature of the scheme is abundantly clear. Discrimination, both in law

---

**5.** To have vested pension rights, an employee had to have been continuously employed by the A & P for ten years. He also had to be at least thirty-two years of age if he worked at the Albany, Columbus or Bloomdale locations or at least forty years of age if at the Buffalo or Syracuse operations.

**6.** The evidence indicates that there were five employees over the age of fifty-five who, because they had not worked for the defendant for the required ten years, were ineligible for early retirement and thus received severance pay. *See* Trial Stipulation, Exhibits A–E.

and in reason, is an individual matter. As to any particular employee who was in fact illegally discriminated against, it makes no difference that other employees, even many others, were not discriminated against. The law is designed to protect minorities, even very small minorities. The constitutional and statutory protections are for individuals, not groups.

The defendant also contends that the distinctions drawn by its severance pay scheme were based on "reasonable factors other than age," 29 U.S.C. § 623(f)(1), and thus defensible under the ADEA. In support of this argument, the defendant asserts that the provisions in the collective bargaining agreements, which give rise to the discriminatory practice complained of here, were framed for the purpose of giving employees whose income was cut off enough money to tide them over until they could secure other employment. It reasons that any employee who could receive early retirement pension payments had enough money to cushion the loss of wages, just as those who received severance pay did.

This pious protestation of the defendant's concern for its former employees is belied by the facts. The pittances which the evidence shows the early retirees receive in most cases would barely keep an individual alive, much less a family. On the other hand, the severance pay for many of the employees entitled to it amounted to two or three thousand dollars. The severance pay generally was large enough to prevent financial disaster. The early retirement benefit generally was not. The one who most benefitted financially from the severance pay plan was the defendant. How much the defendant benefitted was based on factors which included age. The age of the displaced workers did make a difference, both to them and to the defendant.

■ The severance pay plan, which wrought such inequities, cannot be justified by the defendant's reliance on Section 4(f)(1). The Court finds that, even though employees 55 years and older were eligible for pension benefits, this fact is "not a 'reasonable factor other than age' justifying the denial of severance pay." *Borden's*, 724 F.2d 1390, 1394 (9th Cir.1984). *See E.E.O.C. v. Westinghouse Elec. Co.*, 725 F.2d 211, 222 (3d Cir.1983), *cert. denied*, —— U.S. ——, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984) ("eligibility for early retirement is too closely related to age to be given credence as a valid justification [under Section 4(f)(1) ]"). Permitting employers to utilize this rationale in denying benefits to older employees would emasculate the purposes of the ADEA. *See Westinghouse Elec. Co.*, 725 F.2d at 222–23.

Nor will it do to say that the discrimination so clearly demonstrated by the evidence was the result of a bona fide employee benefit plan and therefore exempt from the ADEA's proscriptions by virtue of Section 4(f)(2).[7] To support this argument and to bring its severance pay plan within the purview of the statutory exception, the defendant contends that the plan at issue in this cause, along with the pension plan[8], was part of an integrated package of employee benefits negotiated as part of the collective bargaining agreements between the company and the union.

It appears, however, that the defendant has dragged in its pension plan to clothe its severance pay plan with legitimacy and to achieve results which it was not designed to achieve. In the process, the defendant has deprived the beneficiaries of the pension plan of their rights to determine at what age they would accept retirement.

■ Moreover, the defendant's claim that the severance pay plan is valid based

---

7. As previously stated, this statutory section provides in pertinent part that it shall not be unlawful for an employer

 to observe the terms of a bona fide seniority system or any bonafide employee benefit plan such as a retirement, pension, or insurance

plan, which is not a subterfuge to evade the purposes of this chapter....
29 U.S.C. § 623(f)(2).

8. The parties have agreed that, for purposes of this action only, the defendant's pension plan is bona fide. Trial Stipulation No. 15.

on the fact that it was bargained for between the company and the unions is equally without merit.

Collective bargaining agreements such as those involved here are hardly bona fide. They were not negotiated as are those which involve young businesses. These were designed to enable the labor organizations involved to salvage something from the wreckage of the establishments whose employees they represented. These organizations cannot be blamed if they, too, discriminated in favor of their younger members. They were not dealing in the open market, but with a gun at their heads. In any event, it is no defense to the defendant that the labor organization aided and abetted, or at least condoned, its violation of the ADEA.

 Notwithstanding · the defendant's claims, the evidence is clear that the severance pay plan was not part and parcel of a total, integrated benefit package. The severance and pension plans were adopted at different times and were documented separately.[9] *See Borden's, Inc.*, 724 F.2d at 1396 (where negotiated severance pay policy was only loosely integrated with the company's pension plan and embodied in separate documents, plan not an integral part of retirement and pension package for purposes of Section 4(f)(2)). The only correlation between the two plans was that eligibility for early retirement precluded eligibility for severance pay. Faced with a similar argument, the Third Circuit Court of Appeals noted that:

> [t]he mere fact that the benefits available to employees under the Pension Plan were to be considered when determining eligibility for [layoff-benefits], however, does not merge the two plans into a single "coordinated benefit plan." [*E.E.O.C. v. Borden's, Inc.*, 551 F.Supp. 1095, 1099 (D.Ariz.1982), *aff'd*, 724 F.2d 1390 (9th Cir.1984)]. On the contrary,

this interaction shows that the [layoff-benefits] Plan is not an integral part of the Pension Plan.

*E.E.O.C. v. Westinghouse Elec. Co.*, 725 F.2d 211, 225 (3d Cir.1983).

The Court finds further, in reviewing the severance pay plan independently, that it does not meet the criterion of those employee benefit plans that have been held to come within the ambit of Section 4(f)(2). The legislative history of this statutory exception reveals congressional recognition that the cost of providing certain benefits, such as insurance and pensions, to older workers was unavoidably higher than the cost of providing similar benefits to younger workers. *See generally Borden's*, 724 F.2d at 1396. To encourage the hiring of older employees without causing an undue financial burden on employers, Section 4(f)(2) permits age distinctions to be made in benefit plans where age significantly increases the cost factor of providing the benefits. *See Westinghouse*, 725 F.2d at 224. The severance pay plan at issue, in contrast to retirement, pension and insurance plans, does not reflect a similar age-related cost factor. That is, for example, it would cost no more to provide severance pay to an employee 58 years of age with 10 years service than it would to provide severance pay to a 54 year old employee with a similar length of service. Denying severance pay to employees 55 years of age and older indeed saved money for the defendant, but only because it arbitrarily discriminated on the basis of age in violation of the ADEA.

For the reasons stated, this Court concludes that the defendant A & P's plan for severance pay which denied such pay to employees who were eligible to take early retirement is in violation of the ADEA and, therefore, the plaintiff is entitled to prevail in this action. Judgment must be rendered in favor of the plaintiff and against the defendant.

9. Trial Stipulations Nos. 6 and 12, Exhibits F and G, show that the Employees' Retirement Plans were adopted on October 1, 1948, and amended on January 1, 1976, and September, 1973, respectively. Trial Stipulations Nos. 7–11 establish that the separately negotiated severance pay plans became effective on May 1, 1966, September 22, 1972, May 6, 1973, September 19, 1966, and October 18, 1970, respectively.

It is Ordered and Adjudged that counsel for plaintiff shall, pursuant to Local Civil Rule 5.02, prepare and submit a judgment and order expressive of the Court's findings and conclusions in this Opinion and Order.

IT IS SO ORDERED.