EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

The FIRESTONE TIRE & RUBBER COMPANY, International Union of the United Rubber, Cork, Linoleum and Plastic Workers of America, AFL–CIO, CLC, and Its Local 186, Defendants.

No. 85–2675–MA.

United States District Court, W.D. Tennessee, W.D.

Jan. 14, 1987.

---

George C. Bradley, Sr. Trial Atty., E.E.O.C., Memphis, Tenn., for plaintiff.

C. Daniel Karnes, Jones, Day, Reavis & Pogue, Cleveland, Ohio, Charles R. Armstrong, General Counsel-Union, Akron, Ohio, George E. Barrett, Barrett, Davidson, Bryan, Ray & Ross, Nashville, Tenn., Joseph K. Willcox, Glankler, Brown, Gilliland, Chase, Robinson & Raines, Memphis, Tenn., for defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

McRae, District Judge.

The plaintiff, the Equal Employment Opportunity Commission (EEOC), and the defendants, the Firestone Tire & Rubber Company (Firestone), the International Union of United Rubber, Cork, Linoleum & Plastic Workers of America, AFL–CIO, and Local 186, International Union of the United Rubber, Cork, Linoleum & Plastic Workers of America (Unions), are before the Court on Motions for Summary Judgment. The parties, in addition to supporting affidavits and exhibits, have submitted joint stipulations of facts.

This case is one of alleged age discrimination arising from the failure of Firestone to pay a severance award to those employees entitled to a pension when it closed its Memphis plant on March 18, 1983.

### Background

Firestone and its Unions have heretofore agreed that Firestone would fund all promised pension and pension-related benefits on a sound actuarial basis through a pension trust. The pension and pension-related benefits that Firestone has been required to fund in its pension trust are set forth in the Master Pension and Insurance Plan for Hourly-Rated Employees (P & I Plan).

The P & I Plan at issue in this case grew out of the P & I Plan first adopted in 1950. Between 1950 and 1982, the Union repeatedly demanded that Firestone expand the class of employees entitled to distributions from the pension trust—periodic or lump sum, with the latter initially being denominated "severance awards." Over this period, Firestone agreed to some, but not all, of these demands.

The P & I Plan in effect from May 1, 1982, to April 20, 1985, and applicable to the Memphis facility at the time of its closure, provided that:

In the event of a Plant Closure....

(i) An Employee who then has 25 or more years of credited service ... shall be eligible for an immediate pension (the provisions of Paragraph 5, Article IV notwithstanding....

(ii) An Employee who then shall have attained age 55 and completed 5 or more years of credited service shall be eligible for a pension ... [and] the early retirement reduction because of age pursuant to Paragraph 2 of Article V shall not be applicable.

(iii) The Employer will pay a severance award determined in accordance with Paragraph 11(a) of this Article VII (but no other benefit) to an Employee who is released from employment as a result thereof, provided such Employee has 5 or more years of credited Service and is ineligible for a pension.

(iv) An employee who is eligible for a deferred vested pension ... but ineligible for any other pension ... may elect to receive, in lieu of such deferred vested pension[,] a special distribution determined in accordance with Paragraph 11(b)(i) of this Article.

On July 15, 1982, Firestone advised the Union that the Memphis plant was in a "distressed" situation, and on August 17, 1982, Firestone announced that it would close the plant.

Production operations ceased at the Memphis plant on March 18, 1983. However, approximately one hundred employees volunteered to stay on in a plant closure clean-up crew and thus worked beyond the March 18, 1983 closure date.

At the time of their lay-offs, voluntary or involuntary, employees became entitled to withdraw the monies previously set aside for them in the pension trust—as provided by the P & I Plan. Employees with 25 or

more years of service received immediate unreduced monthly pensions and extended life and health insurance benefits for life, regardless of age. Employees age 55 and over with at least five years of service received the same immediate unreduced pension and insurance entitlements. Employees under age 55 with ten to twenty-four years of service received deferred vested pensions (and the option to receive "special distributions" instead), with no extended life or health insurance benefits. Employees under age 55 with five, but less than ten, years of service received "severance awards," with no extended life or health insurance benefits. Finally, regardless of age, employees with less than five years of service received no monies from the pension trust and no extended life or health insurance benefits in the closure.

In the P & I Plan, the fact that an employee was "eligible for a pension" did not mean that the employee was "eligible for retirement." An employee with ten or more years of service was "eligible for a pension," and an employee became "eligible for retirement" when he reached the age of 55.

### Discussion

On July 30, 1985, the EEOC filed suit against Firestone and its Unions alleging that they had violated the Age Discrimination in Employment Act of 1967 (ADEA) by observing the terms of their collectively bargained P & I Plan in the 1982–83 closure of Firestone's manufacturing plant in Memphis.

The EEOC contends that the failure to pay a severance award to the affected parties was based either on an expressed policy not to pay employees age 55 or over with at least five years of service or an implied policy of not paying employees in the protected age group with twenty-five or more years of service.

The EEOC is of the belief that the decision as to who was to be deprived of severance pay was determined with explicit reference to age and thus constituted a *per se* violation of the ADEA.

Firestone responds by arguing that the EEOC is statutorily estopped from bringing this action; that EEOC cannot establish a prima facie case of unlawful age discrimination; that EEOC is barred, because of the ADEA's exemption for bona fide employee benefit plans, from challenging the severance award provision of the P & I Plan; and that EEOC is time barred from bringing this action.

This Court will address only three issues in granting defendant's Motion for Summary Judgment. The first issue to be considered is whether the EEOC is barred by the statute of limitations from bringing this cause of action. The second issue to be decided is whether the EEOC can establish a prima facie case of unlawful age discrimination if the older hourly employees at the Memphis plant were not treated adversely. The final issue that the Court will address is whether Firestone is entitled to the bona fide employee benefit plan defense.

A common theme will run through the discussion of each of these topics. That theme is whether the severance award under challenge is in fact merely a minimum pension benefit from the trust fund or severance pay as that term has commonly been understood.

Black's Law Dictionary defines severance pay as "[P]ayment by an employer to an employee beyond his wages on termination of his employment." Firestone asserts that:

[u]nlike ordinary "separation" or "termination" pay, which many employers pay out of their cash drawers to replace the income employees terminated in plant closures have lost, the "severance awards" that Firestone paid in the Memphis plant closure were minimum pension trust distributions which, pursuant to the terms of the P & I Plan, had already been partially funded in the pension trust.

(Affidavit of Paul A. Gerwirtz at pp. 10–11). The EEOC has not submitted any evidence that would lead this Court to believe that Firestone's severance award was

not in fact a minimum pension trust distribution and therefore not severance pay at all.

### Statute of Limitations

Section 7(e) of the ADEA, 29 U.S.C. § 626(e), incorporates Section 6(a) of the Portal to Portal Act of 1947, 29 U.S.C. § 255(a), which in turn provides that: "every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."

The EEOC filed this action on July 30, 1985, which is more than two years after the Memphis plant closed on March 18, 1983. The EEOC argues that the statute of limitation was tolled for 117 days, starting with its March 29, 1985 letter of violation and ending with its July 24, 1985 phone call indicating that further conciliation was pointless. Assuming that the EEOC's position is correct, this action was effectively commenced on April 5, 1985, which is still more than two years after the Memphis plant closed.

■■■ A cause of action accrues when the allegedly unlawful employment practice takes place and the alleged discriminatees are notified of it. See *Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981). Thus, when an employer makes an allegedly discriminatory employment decision, the cause of action accrues on the date that the affected individuals first learn of it—even if the "eventual loss of [employment benefits]—d[oes] not occur until later." *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980).

■■■ In this case, the discriminatory practice that the EEOC is challenging is the denial of severance pay to several hundred employees because of their eligibility for a pension in the closure of the Memphis plant. Since Firestone had advised each employee of the benefits he or she would receive and had made those benefits available to all, the cause of which the EEOC complains had clearly accrued by the

March 18, 1983 closure date. See *EEOC v. Westinghouse Electric Corp.*, 725 F.2d 211, 219–20 (3rd Cir.1983).

The fact that approximately 100 employees joined a plant closure team and worked beyond the plant closure date does not extend the time within which a suit must be filed. See *Chardon*, 454 U.S. at 8, 102 S.Ct. at 29. The fact that Firestone terminated these employees at a later date is only an "inevitable but neutral consequence" of the decision which the EEOC is challenging. See *Delaware State College*, 449 U.S. at 257–58, 101 S.Ct. at 503–04.

Accordingly, this cause of action accrued on the March 28, 1983 closure date when the decision was final and Firestone was legally obligated to provide all employees with their P & I Plan benefits on or before that date.

Therefore, this suit can be considered timely filed only if Firestone willfully violated the ADEA, thereby bringing the three-year statute of limitations into plan.

Willfulness is relevant in the ADEA in two areas: extending the statute of limitations to three years and imposing liquidated damages on the defendant. 29 U.S.C. §§ 255(a) and 626(b).

With respect to the question of liquidated damages, the Supreme Court has defined willful as whether "the employer ... knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Trans World Airlines v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985), *Williams v. Caterpillar Tractor Company*, 770 F.2d 47, 50 (6th Cir.1985) (The Sixth Circuit has not addressed the issue of the appropriate standard of willfulness with respect to extending the statute of limitations under the ADEA).

The competing standard, which was rejected by the *Thurston* court, was that an employer's action should be considered willful if done knowingly and intentionally while aware that the ADEA was "in the picture." See *Coleman v. Jiffy June*

*Farms, Inc.* 458 F.2d 1139, 1142 (5th Cir. 1971).

The Supreme Court concluded that Congress intended to create a two-tiered liability scheme. Normal damages were to be imposed for violation of the Act, and if an employer's action could be characterized as willful, liquidated damages would be imposed also. Because employers are required to post ADEA notices, they could rarely plead that they did not know that ADEA was "in the picture." This broad definition of willfulness would make the imposition of liquidated damages the norm. The Supreme Court held that such a broad standard would frustrate the statutory scheme and, with respect to liquidated damages, insisted that a more restrictive meaning be given to willful conduct which required a showing of knowing violation or reckless disregard of the terms of the ADEA. *Thurston,* 105 S.Ct. at 625.

Several circuit courts, in the aftermath of *Thurston,* have considered the question of what should be the standard of willfulness for statute of limitations purposes and have concluded that the "in the picture" standard is still appropriate. *Donovan v. Bel-loc Diner, Inc.,* 780 F.2d 1113 (4th Cir. 1985); *Secretary of Labor v. Daylight Dairy Products, Inc.,* 779 F.2d 784 (1st Cir.1985).

The *Thurston* court had left this question open by observing that "[e]ven if the 'in the picture' standard were appropriate for the statute of limitations, the same standard should not govern a provision dealing with liquidated damages." *Thurston,* 105 S.Ct. at 625.

These circuit courts justified applying the "in the picture" standard because "quite different purposes [are] intended to be served by the limitations and liquidated damages provisions: the latter to punish, the former merely to extend the period of restitutionary recovery...." *Donovan* at 1117. In addition, public policy demands that "[b]ecause the Act is remedial legislation, we construe it in favor of coverage of the employee." *Daylight Dairy Products, Inc.* at 789.

This reasoning was convincingly rejected by the Seventh Circuit in *Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 308–12 (7th Cir.1986).

The distinction made between liquidated damages and extending the statute of limitations based on the punitive nature of one but not the other was shown to be unpersuasive. "[P]unitive-ness is in the eye of the beholder; both § 6(a) and § 16(b) increase the plaintiff's recovery, and neither plaintiff nor defendant is apt to draw so neat a distinction about the source and reason for an extra dollar of compensation." *Walton* at 309.

The public policy argument was similarly undercut when the court noted that "the direction of the change ... does not tell us how far the change was to go. Legislation is a compromise. Every statute has a stopping point." *Id.* at 311.

The *Walton* court instead focused on the structure of the ADEA and determined that Congress intended to create a two-tiered limitation period with two years being the norm and three years applied only if an employer's conduct could be characterized as willful. The broad "in the picture" standard would destroy this two-tiered system for the same reasons identified by the *Thurston* court when it considered the question of liquidated damages. *Walton* at 310–11.

■ Therefore, this Court rejects the EEOC's argument that the appropriate standard of willfulness for statute of limitations purposes is the "in the picture" standard. Instead, the EEOC must show that Firestone knowingly violated or acted in reckless disregard of the ADEA in order to classify the defendant's actions as willful, thereby implicating the three-year statute of limitations.

■ As this Court will discuss when it considers whether the EEOC has alleged a prima facie case of age discrimination, it is not credible to assume that Firestone could have been on notice that the payment of a minimum pension benefit (called a severance award) to some employees while oth-

ers received a more valuable pension benefit could have constituted a violation of the ADEA, let alone a willful violation.

Therefore, the Court finds that Firestone's actions in paying a severance award to some but not all employees cannot be considered a willful violation of the ADEA, and that the suit, effectively filed on April 5, 1985, is time barred because of a failure by the EEOC to abide by the two-year statute of limitations.

### Prima Facie Case Under ADEA

The provision of the ADEA that EEOC contends Firestone has violated reads:

(a) Employer Practices

It shall be unlawful for an employer—(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age....

29 U.S.C. § 623(a)(1). To prevail on a claim under the ADEA, the plaintiff must first establish a prima facie case of age discrimination.

█ In order to state a prima facie case of age discrimination, the EEOC must show both that Firestone treated employees in the protected age group adversely and that they did so because of those employees' ages. See *Ridenour v. Lawson County,* 791 F.2d 52, 55 (6th Cir.1986). This Court will reach only the question of whether the employees in the protected age group were treated adversely. The Court does not express an opinion on whether the EEOC has carried its burden of showing that Firestone allegedly discriminated on the basis of age.

█ Firestone contends that when the P & I Plan is viewed as a whole, it is apparent that members of the protected age group received greater overall benefits. The most valuable benefit, immediate unreduced monthly pensions for life, are available only if an employee has 25 years of service or is over 55 and has 5 or more years of service to the company. The less valuable deferred vested pension (with the special distribution option) is open to those

employees under age 55 with between 10 and 24 years of service. The least valuable benefit, the severance award, is payable only to those employees under age 55 with between 5 and 9 years of service.

Each pension benefit is funded and payable through the pension trust. Specifically, the severance award is a minimum distribution from the pension fund which was not designed to replace the lost income resulting from lay-off, but rather to replace the pensions that Firestone had started funding for these employees. (Affidavit of Paul A. Gewirtz at p. 11).

The EEOC has presented no evidence to rebut Firestone's contention that the severance award was merely a minimum pension benefit forming one part of a fully integrated pension plan. The EEOC has simply assumed that Firestone's severance award is functionally identical to severance pay. Once this assumption is made, the EEOC's theory of the case makes sense, but once this assumption is rebutted, its theory of the case fails.

The EEOC cites four cases to support its proposition that Firestone's failure to pay a severance award to those employees eligible for a pension is a violation of the ADEA. *EEOC v. Westinghouse Elec. Corp.,* 725 F.2d 211 (3rd Cir.1984); *EEOC v. Borden's, Inc.,* 724 F.2d 1390 (9th Cir. 1984); *EEOC v. Great Atlantic and Pacific Tea Co.,* 618 F.Supp. 115 (D.C.Ohio 1985); *EEOC v. Curtiss-Wright Corp.,* 40 FEP Cases 666 (D.C.N.J.1982). The Court will examine each case in turn and demonstrate that if Firestone's severance award is considered to be a minimum pension benefit integrated into a coordinated pension plan, then no violation of the ADEA is possible under the authority expressed in these cases.

In *Westinghouse Elec. Corp.,* the EEOC challenged the legality of the company's Layoff Income Benefit (LIB) Plan. Westinghouse limited participation in the LIB to those employees who were laid off through no fault of their own, had completed two years of service, and were not eligible for early retirement (age 55 and a year in

service requirement). The EEOC charged that this plan, which excluded employees 55 years or older from LIB payments, violated the ADEA. *Westinghouse Elec. Corp.* at 214–15.

The *Westinghouse* court, however, specifically found that the LIB plan was "functionally independent of the Pension plan" and would not be considered part of a "single 'coordinated benefit plan.'" *Id.* at 225.

Two basic factors serve to distinguish the case at bar from the factual situation in *Westinghouse.* First, Firestone contends that its severance award is a minimum pension benefit and was not intended to be a lay-off income benefit. Secondly, Firestone contends that its severance award is an integral part of its pension plan while a similar claim on behalf of the LIB plan was advanced by Westinghouse but rejected by the court. Because the Court accepts Firestone's contentions, which are amply supported by the evidence, *Westinghouse* is not persuasive authority in support of the EEOC's allegations.

In *EEOC v. Borden's, Inc.*, the court found that the company's policy of making severance pay available only to those employees who were not entitled to retirement (age 55 with at least 10 years of service) was in violation of the ADEA. The facts surrounding the closure of Borden's dairy plant and the adoption of the severance pay plan serve to distinguish this case from the factual situation of the case herein.

Borden's closed its dairy plant on December 31, 1979. In November of 1979, the company and its union negotiated an addendum to the collective bargaining agreement to create the severance pay plan. *Borden's* at 1391. The collective bargaining agreements were only loosely integrated with the pension, retirement, and insurance plans, which were embodied in different documents. *Id.* at 1396.

Under these facts, the *Borden's* court found that the severance pay policy was merely a "simple fringe benefit" and not "an integral part of a complex benefit scheme." *Id.* at 1396–97.

Firestone, however, contends that its severance award has been an integral part of its pension benefit scheme since 1955, and has been the subject of intensive collective bargaining for over thirty years. In plant closure situations, Firestone argues that its severance award cannot be looked at in isolation because it is only one part of a coordinated plan to distribute benefits from the pension trust to its eligible employees. Fundamentally, Firestone is of the opinion that its severance award is simply not comparable in purpose or source of funding to the severance pay at issue in *Borden's.*

The Court agrees. The EEOC has simply not submitted any evidence to rebut Firestone's contentions. As a result, the *Borden's* case is not persuasive authority on the facts that are before this Court.

Similarly, in *EEOC v. Great Atlantic and Pacific Tea Co.*, the court found that "[n]otwithstanding the defendant's claim the evidence is clear that the severance pay plan was not part and parcel of a total, integrated package." *Id.* at 122. The court based its conclusion on the grounds that the severance and pension plans were adopted separately, contained in different documents, and the only correlation between the two plans was that eligibility for early retirement precluded eligibility for severance pay. *Id.*

As has been stated before, Firestone's severance award has been a part of its pension plan since 1955, has been included in the plant closure provisions since 1976, has been bargained for and is contained in the same document, and is an integral part of a coordinated plan. *Great Atlantic and Pacific Tea Co.* is simply not convincing precedent on the facts of this case.

Finally, in *EEOC v. Curtiss-Wright Corp.*, the court ruled that a severance pay policy that excluded those employees eligible for a pension (age 65 and a year in service requirement) was in violation of the ADEA. *Id.* at 667. The court did not discuss the question of whether the company's severance and pension policies were so interrelated that they should be considered as one. Since that is the question this

Court must answer, *Curtiss-Wright Corp.* is not helpful authority.

The end result of this case-by-case analysis is to help the Court determine whether the entire plant closure benefit scheme or just the severance award should be considered in deciding if Firestone's P & I Plan impacted adversely on members of the protected age group.

The Court concludes that Firestone's severance award is part of a coordinated pension scheme and is, in fact, merely a minimum pension benefit designed to refund to those employees not eligible for a pension some of the money that had already been set aside for them in the pension trust.

Therefore, looking at the P & I Plan as a whole, it is apparent that members of the protected age group were provided with greater overall benefits than younger employees and that there was no adverse treatment. Accord, *Dorsh v. L.B. Foster Co.*, 782 F.2d 1421, 1427–28 (7th Cir.1986). The EEOC has not been able to make out a prima facie case of age discrimination because it has not been able to show that members of the protected age group were treated adversely, thereby justifying summary judgment in favor of the defendants.

*Bona Fide Pension Plan*

■ The ADEA provides an affirmative defense that permits an employer

> to observe the terms of ... any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual [or involuntary retirement on account of age].

29 U.S.C. § 623(f)(2). To qualify for an exemption under this section, Firestone's severance award policy must be the sort of "plan" covered by this section, must be "bona fide" which has been held to mean no more than that the plan exists and pays substantial benefits, *Marshall v. Hawaiian Telephone Co.*, 575 F.2d 763, 766 (9th Cir. 1978), and Firestone must have observed the plan, and the plan must not be a subter-

fuge to evade the purposes of the act. *See Borden's* at 1395.

The question of whether Firestone's plant closure provisions should be considered part of a bona fide plan thereby creating an affirmative defense is broadly similar to the question of whether the severance award or the plant closure section as a whole should be considered in determining if the plan impacted adversely on employees in the protected age group.

The EEOC does not question that the P & I Plan is a plan within the meaning of § 623(f)(2) or that Firestone faithfully executed the plan when it closed its Memphis facility. The EEOC does contend that the plant closure provisions should not be considered as being a part of a bona fide plan, and if included in the plan that these provisions are a subterfuge for evading the ADEA.

Again, the underlying assumption of the EEOC is that Firestone's severance award is a benefit that can be separately evaluated apart from the other methods of distributing benefits from the pension trust in the event of a plant closure.

The existence of this assumption can be demonstrated by analyzing two of the major objections the EEOC has presented to Firestone's claim that it is entitled to the "bona fide plan" defense.

The EEOC contends that the severance pay policy at issue here is a form of earned compensation wholly unrelated to age and is not the type of plan that Congress meant to exempt. Firestone allegedly cannot cut the costs of this plan by denying severance payments to older workers.

However, if Firestone's severance award is considered to be a minimum pension distribution to those employees not eligible for a pension, but for whom monies had been set aside for them in the trust, then it would not make sense to characterize such a payment as severance pay or to consider that benefit independently from the other pension benefits.

Additionally, Firestone has shown that funding for its severance award is based on

**1570**

the ages of its employees even though the amount of the benefit is independent of age. (Affidavit of Paul A. Gerwirtz at pp. 5–6).

Finally, the EEOC argues that this plan is a subterfuge because everyone over forty was denied severance pay. Again, this contention is based on the assumption that Firestone's severance award is a benefit that can be looked at separately from the other plant closure benefits.

*Conclusion*

The Court cannot ignore the fact that every employee who was denied a severance award received a more valuable benefit in the form of a deferred vested pension or an immediate unreduced pension (if any benefit was received at all). Also, the Court finds credible Firestone's unrebutted statement that the severance award was merely a minimum pension distribution from the pension trust designed to return to the employee the pension that Firestone had started funding. (Affidavit of Paul A. Gerwirtz at p. 11). This case, in fact, is not about severance pay at all, the arguments of the EEOC notwithstanding.

The Court finds: (1) that Firestone could not anticipate that the ADEA would be violated by its P & I Plan and did not willfully violate the Act; (2) that the P & I Plan did not impact adversely on a protected age group; and (3) that the P & I Plan is a bona fide pension plan within the meaning of § 623(f)(2). As a result, the EEOC has failed to timely bring this suit, has failed to state a prima facie case of age discrimination, and Firestone has successfully shown that it is entitled to the bona fide plan defense. Therefore the defendant's Motion for Summary Judgment is hereby granted.

IT IS SO ORDERED.