**John ABENANTE, et al., Plaintiffs,**

**Equal Employment Opportunity Commission, Intervenors,**

v.

**FULFLEX, INC., Defendant.**

**Civ. A. No. 87–0456B.**

United States District Court, D. Rhode Island.

Dec. 1, 1988.

Marc B. Gursky, Providence, R.I., for plaintiffs.

Kevin Marrazzo, New York City, for EEOC.

Michael Defanti, Providence, R.I., for defendant.

## OPINION

FRANCIS J. BOYLE, Chief Judge.

The fifty-four Plaintiffs in this action seek damages approximating $1,300,000 from their former employer, Fulflex, Inc., the Defendant, contending that they were discriminated against on the basis of their age. The Defendant Fulflex, Inc. until March 1, 1986 manufactured elastic which was used to make golf balls in Bristol, Rhode Island. On that date Fulflex ceased doing business and practically all of its employees at the Bristol plant were terminated at or before that date. The termination precipitated this litigation.

Beginning in 1961 Fulflex established a pension plan which provided benefits to the employee at the time of retirement and the amount of which was dependent on the length of service and the earnings level of the employee. It is funded entirely by the employer, Fulflex. In 1966, in addition to the pension plan, a separation pay agreement was negotiated in the collective bargaining process with Local 474 United Rubber Cork, Linoleum, and Plastic Workers of America AFL–CIO.

In 1974 the provision in the separation pay agreement with respect to forfeiture was changed. Language was added that provided that if ERISA is interpreted in such a manner that it is impossible to effectuate the pension forfeiture provision contained in paragraph 4 of the agreement there shall be deducted from the separation payment due any employee an amount which represents the then present value of such employee's vested accrued benefit under "The Fulflex, Inc. Pension Plan." The separation pay agreement in effect at the time of the plant closing is the agreement of October 1, 1983. It in part reads:

> There shall be deducted from the separation payment due any employee an amount which represents the then present value of such employee's vested accrued benefit under "The Fulflex, Inc. Pension Plan." An employee, upon acceptance of a separation payment, shall be deemed to have terminated his seniority with the Company and shall be deemed to have forfeited any and all insurance or other rights (except vested pension rights) under any employee benefit plan, financed by or to which the Company has contributed as an employer, provided, however, that retired employees shall retain whatever rights they may have under the employee's benefit program set forth in the applicable collective bargaining agreement.

Because the present value of a vested pension which was payable to employees upon attaining age 65 is more valuable to an older person than a younger person, the deduction of the present value of future pension rights reduced the separation pay of older employees to a greater extent than younger employees with similar terms of employment. The result which followed was that employees with comparable periods of employment and similar wages under the age of 40 tended to receive a larger percentage of their separation pay than employees over the age of 40. This result the Plaintiffs contend is a violation of the Age Discrimination in Employment Act (ADEA).[1] The Defendant replies that

---

1. The statute provides that:
   It shall be unlawful for an employer—
   (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
   (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his

this plan does not violate the ADEA because the total benefits paid to employees upon the plant's closing did not disfavor older workers. The Defendant also argues that the Separation Pay Agreement was a "bona fide employee benefit plan" within the meaning of § 4(f)(2) of the ADEA.[2]

■ Plaintiffs proceed on both disparate treatment and disparate impact theories. A disparate treatment theory requires a showing of purposeful or intentional discrimination, while a disparate impact theory requires proof that a facially neutral practice has a significant discriminatory impact on older employees. *Holt v. Gamewell Corp.,* 797 F.2d 36, 37 (1st Cir.1986). Under either theory, Plaintiffs must show that they were denied a benefit because of their age. This they failed to do.

First, this is not a situation in which employees were eligible for certain benefits and then had their vested rights taken away because of their age. The Plaintiffs were entitled only to the separation pay calculated with the formula set forth in the existing collective bargaining agreement. In that formula, their separation pay was a function of their vested pension rights. In some cases, this resulted in employees receiving no separation pay at all. Yet these employees did not have their separation pay taken away; rather, the employees were not entitled to the separation pay in the first instance.

■ The issue then becomes whether the plan itself, the collective bargaining agreement's relationship between separation pay and vested pension rights, somehow violates the ADEA. Plaintiffs rely on a number of cases to support that proposition, including *E.E.O.C. v. Borden's Inc.,* 724 F.2d 1390 (9th Cir.1984), *E.E.O.C. v. Westinghouse Elec. Corp.,* 725 F.2d 211 (3d Cir.), *cert. denied,* 469 U.S. 820, 105 S.Ct.

92, 83 L.Ed.2d 38 (1984), and *E.E.O.C. v. Great Atlantic and Pacific Tea Co.,* 618 F.Supp. 115 (N.D.Ohio 1985). *But see Patterson v. Independent School Dist.,* 742 F.2d 465, 467 n. 3 (8th Cir.1984) (stating that the *Borden's* decision is "questionable"). These cases are distinguishable and are therefore unpersuasive.

In this case, the pension plan and separation pay agreements are part of a single coordinated benefit plan. They stem from the same package of rights. The pension plan and separation pay agreement have been contained together in the collective bargaining agreement since 1966 (prior to the ADEA's enaction). The 1983 collective bargaining agreement in effect at the time of the closing included both plans; in fact, a single document contained both plans. Although there are separate signature blocks for each agreement, the separation pay agreement and pension agreement were signed on the same day. There was no evidence that the agreements were signed in anticipation of an imminent closing.

The cases Plaintiffs cite rest on the finding that the separation pay (whether termed "layoff income and benefits" or "severance pay") was a separate and distinct benefit from the pension plan and not part of a coordinated package of benefits. *See Borden's,* 724 F.2d at 1396 (facts indicate that severance pay policy was not "an integral part of its retirement and pension package"); *Westinghouse,* 725 F.2d at 225 (layoff income and benefit plan "is functionally independent of the Pension Plan"); *Great Atlantic and Pacific Tea Co.,* 618 F.Supp. at 122 ("severance pay plan was not part and parcel of a total, integrated benefit package"). In *Borden's,* for example, the severance pay policy was negotiated one month before the closing, as an

---

status as an employee, because of such individual's age; or

   (3) to reduce the wage rate of any employee in order to comply with this chapter.

  29 U.S.C. § 623(a).

**2.** That provision in pertinent part states that: It shall not be unlawful for an employer ...

  (2) to observe the terms of ... any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter....

  29 U.S.C. § 623(f)(2).

addendum to a pre-existing collective bargaining agreement. 724 F.2d at 1391. The pension and severance pay plans were embodied in different documents. *Id.* at 1396. Similarly, in *Great Atlantic and Pacific Tea Co.*, the court noted that the severance pay and pension agreements were not adopted at the same time and were not contained in the same document. 618 F.Supp. at 122 & n. 9. As mentioned earlier, the Fulflex Collective Bargaining Agreement signed on October 1, 1983 contained both the separation pay plan and pension agreement in a single document. *Cf. E.E.O.C. v. Firestone Tire & Rubber Co.*, 650 F.Supp. 1561, 1569 (W.D.Tenn. 1987) (concluding that "severance award is part of a coordinated pension scheme").

■ Because the Court finds that the separation pay agreement is part and parcel of a total benefit package, the relevant inquiry thus becomes whether older employees were treated less favorably than younger employees in terms of the total benefits they received or will receive as a result of the plant's closing. The evidence supports the finding that the value of the total benefits received by similarly situated older employees is at least equal to and in some instances exceeds the value of the total benefits received by similarly situated younger employees.[3]

The difference between the benefits is one of timing: the younger employees have already received the separation pay while the older employees must wait for future disbursements from the pension fund. The present value of the future pension payments, however, for some older employees with equivalent terms of employment is greater than the present value of the lump sum separation payment. Moreover, the present value of a future pension for an older employee is greater than the present value of a future pension for a younger employee because the older employee has a greater chance to attain the pension age. This is an actuarial fact, not discrimination. *Cf. Arizona Governing Committee for Tax Deferred Annuity and Deferred Compensation Plans v. Norris*, 463 U.S. 1073, 103 S.Ct. 3492, 77 L.Ed.2d 1236 (1983) (retirement benefits discriminating on basis of gender violates Title VII); *City of Los Angeles Dept. of Water and Power v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978) (contributions to pension fund on basis of gender violates Title VII).

Although *Manhart* and *Norris* invalidated the use of single sex actuarial tables in certain benefit schemes, the principles underlying those cases are inapplicable in this situation. First, it is doubtful that Congress intended the ADEA to prohibit employers from using actuarial data in all separation pay and pensions benefits plans. At the most, Congress intended to prohibit employers from classifying on the basis of age "for the purpose of imposing a greater burden or denying an equal benefit because of a characteristic statistically identifiable with the group but empirically false in many individual cases." *Norris*, 463 U.S. at 1108, 103 S.Ct. at 3511 (O'Connor, J., concurring) (citing *Manhart*, 435 U.S. at

---

**3.** *See, e.g.,* Exhibit 26 to the Joint Stipulation of Facts (separation payroll and pension benefits). At least eight of the 54 Plaintiffs received no separation pay supporting the conclusion that younger employees with similar terms of employment and wages received less than those older employees. For example, Anthony Desmarias was 58 years old at the time of the plant's closing and had worked at Fulflex for 4.17 years. The value of Mr. Desmarias' vested pension benefit was $5,398.65. Under the separation pay formula, he received no separation pay. Accordingly, the present value of Mr. Desmarias' total benefits was $5,398.65.

K. Raposa and J. Amaral, age 26 and 29 at the time of the closing, also had worked at Fulflex for 4.17 years. Ms. Raposa, Mr. Amaral, and Mr. Desmarias were apparently similarly situated with respect to average wages; the initial calculations of separation pay, from which pension benefits were subtracted, were $1,128.60, $1,391.85, and $1,152.90 respectively. Under the separation pay formula, Ms. Raposa received $928.55 and Mr. Amaral received $1,133.81. The present value of their pensions were $200.05 and $258.04. Therefore, the present value of Ms. Raposa's total benefits was $1,128.60 and Mr. Amaral's was $1,391.85. This is significantly less than the present value of Mr. Desmarias' total benefits.

708–10, 98 S.Ct. at 1375–76). In this case, however, the combined present value of the older employees' separation pay and vested pension rights at least equals the present value of the younger employees' separation pay and pension rights. Thus, because the Court finds that the separation pay agreement and the pension plan are part of the same package of benefits, Fulflex has not imposed any additional burden on its older employees nor has it denied them equal benefits.

Accordingly, Plaintiffs have not shown that they have been deprived of a benefit because of their age. Plaintiffs have therefore failed to establish a prima facie case of age discrimination under either a disparate treatment or disparate impact theory.

■ Assuming *arguendo* that Plaintiffs had established a prima facie case of age discrimination, the Defendant would then have the burden of establishing that the separation pay agreement fell within the "bona fide employee benefit program" exception under 29 U.S.C. § 623(f)(2). *E.E. O.C. v. State of Maine*, 644 F.Supp. 223, 225 (D.Me.1986), *aff'd mem.*, 823 F.2d 542 (1st Cir.1987). In order to prove that the exception is applicable, Defendant must show: (1) that the agreement is a "plan" covered by § 623(f)(2); (2) that Fulflex "observed" the plan; (3) that the plan was "bona fide" and (4) that the plan was not a subterfuge to evade the ADEA's purposes. *See id.* at 225–26. Under the facts of this case, Defendant has established that the separation pay agreement does fall under the auspices of § 632(f)(2).

■ No question exists as to Fulflex's compliance with the separation pay agreement; the agreement was therefore "observed." *See Patterson*, 742 F.2d at 466. Moreover, the agreement was clearly "bona fide." "Bona fide" simply means that the agreement " 'exists and pays benefits.' " *State of Maine*, 644 F.Supp. at 226 (quoting *United Air Lines, Inc. v. McMann*, 434 U.S. 192, 194, 98 S.Ct. 444,

446, 54 L.Ed.2d 402 (1977)). The *Maine* court noted that Congress's 1978 amendments to the ADEA "left undisturbed the *McMann* court's interpretation of the terms 'bona fide' and 'subterfuge.' " *Id.* Thus, the issues are narrowed to whether the separation pay agreement is a plan covered by the section and whether it is subterfuge.

■ Section 623(f)(2) exempts from the ADEA's coverage certain employee benefit plans, "such as a retirement, pension, or insurance plan." 29 U.S.C. § 623(f)(2). The use of the language "such as" is descriptive rather than exclusive. Plaintiffs argue that the separation pay agreement, when examined by itself, is not similar to retirement, pension, or insurance plans. Based on the finding, however, that the separation pay agreement and pension plan are parts of a single coordinated benefit plan, that contention is not persuasive. *Cf. Firestone*, 650 F.Supp at 1569 (rejecting assumption that "severance award is a benefit that can be separately evaluated"); *Patterson*, 742 F.2d at 467 n. 3 (noting that severance pay may be an integrated feature of a retirement plan). Accordingly, the separation pay agreement, when considered in conjunction with the pension plan, is a plan covered by § 623(f)(2).

■ The final issue is whether the separation pay agreement is a subterfuge designed to evade the ADEA's purposes. Under *McMann*, subterfuge is defined as "a scheme, plan, stratagem, or artifice of evasion." 434 U.S. at 203, 98 S.Ct. at 450. That interpretation remains intact despite Congress's 1978 amendments. *See State of Maine*, 644 F.Supp. at 226.

Congress stated that the ADEA's purposes are:

... to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment.

29 U.S.C. § 621(b). Defendant has suggested three reasons to justify the pension offset provision in the separation pay agreement: the 1974 amendments ensured that the benefit scheme complied with ERISA, prevented pension-eligible employees from being penalized by ERISA compliance, and equalized the value of the "cash out" option for all employees.[4] Although Plaintiffs contest the validity of these justifications, they are sufficient to dispel the spectre of subterfuge. The separation pay agreement does not discourage the hiring of older employees.

Ironically, Plaintiffs' position would frustrate the ADEA's purposes. Plaintiffs essentially seek approximately $1,300,000 in severance pay. Were Plaintiffs successful, the value of the total benefits received by older employees would outweigh by an even greater extent the value of the total benefits younger employees received. Older and similarly situated employees would receive a real windfall as compared to the benefits of younger employees. Such a result would surely discourage employers from hiring costlier older employees.

ORDERED, that judgment will enter for the Defendant, with costs.

SO ORDERED.

---

**4.** Defendant also argues that because the separation pay agreement was adopted in 1966, prior to the ADEA's enaction in 1967, it need not "show an economic or business purpose in order to satisfy the subterfuge language of the Act." *McMann,* 434 U.S. at 203, 98 S.Ct. at 450 (footnote omitted). Significant modifications to the agreement subsequent to the ADEA's enaction may convert the plan into a subterfuge, however. *E.E.O.C. v. County of Orange,* 837 F.2d 420, 423 (9th Cir.1988).