**Jeanne P. TAYLOR, Plaintiff,**

v.

**BATTELLE COLUMBUS LABORATORIES,**
Defendant.

No. C-2-83-1058.

United States District Court,
S.D. Ohio, E.D.

March 4, 1988.

Andrew J. Ruzicho, Columbus, Ohio, for plaintiff.

Charles C. Warner, Porter, Wright, Morris & Arthur, Columbus, Ohio, for defendant.

## OPINION AND ORDER

KINNEARY, District Judge.

This matter comes before the Court to consider defendant's motion for summary judgment.

In 1983, plaintiff, Jeanne P. Taylor, filed this employment discrimination action against Battelle Columbus Laboratories, her former employer. Plaintiff alleges that in 1981, when she was 56 years old, defendant discriminated against her on the basis of age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 ("ADEA"). Specifically, plaintiff alleges in her amended complaint (1) that defendant terminated her on the basis of age and that younger employees with less experience and equal qualifications were retained (Am. Compl. ¶ 5a); (2) that defendant failed to comply with its own employment policies because it failed to place her into any other job position for which she was qualified (Am. Compl. ¶ 5b); (3) that defendant failed to consider plaintiff for any job vacancies on the basis of age and that younger, less qualified employees were hired for or transferred to those positions (Am. Compl. ¶ 5c); and (4) that supervisors and other Battelle employees informed her that "older persons would be terminated in order to hire younger, more aggressive persons." (Am. Compl. ¶ 2).

In its motion for summary judgment, defendant contends that plaintiff's termination resulted from a lab-wide reduction-in-force. Furthermore, defendant contends that plaintiff was actually given special consideration because of her age and extensive employment history with Battelle. Defendant also contends that its failure to place plaintiff into any job vacancies was not related to her age in any way. Thus, defendant contends that plaintiff has completely failed to establish any claim under the ADEA. Finally, defendant contends that the majority of plaintiff's claims are barred by the applicable statute of limitations.

In considering this motion, the Court is mindful that summary judgment is appropriate only in limited circumstances. Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The moving party bears the burden of establishing the absence of a genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

The Supreme Court has held, however, that the standard for summary judgment "mirrors the standard for a directed verdict under [Rule 50(a)], which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citing *Brady v. Southern Ry. Co.*, 320 U.S. 476, 479–80, 64 S.Ct. 232, 234–35, 88 L.Ed. 239 (1943)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Thus, the Supreme Court concluded in *Anderson* that a judge considering a motion for summary judgment must "ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."

*Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

In this case, having considered at length the evidence presented by both parties, the Court does not believe that a fair-minded jury could return a verdict for plaintiff. Rather, the Court believes that defendant is entitled to summary judgment on several alternative grounds. The Court's alternative findings are discussed *seriatim* in this Opinion and Order.

## I. *Facts*

Plaintiff was hired by Battelle in 1952 as a Photo Assistant. At that time, she had a B.S. degree in Education and Art and an M.A. degree in History and Political Science. Taylor Depo. at 6. While employed by Battelle, she completed her Ph.D., as well as two years of law school. She also took several in-house courses including statistics, computer programming, technical writing, and several language courses. *Id.* at 6–9.

Throughout her employment with defendant, plaintiff was employed in several different capacities. After 1970, however, she was employed in various functions as a researcher. During that time, plaintiff was repeatedly transferred from one department to another. *Id.* at 13–29. In her performance reviews for 1974, 1975, 1976, 1977, and 1978, plaintiff's performance was characterized as "inadequate" and she was specifically advised that a transfer or termination might be necessary. Def. Ex. 5–9. Finally, in April of 1978, her department manager recommended that Battelle's Review Committee consider plaintiff for involuntary termination due to unsatisfactory performance. Def. Ex. 10. However, after full consideration of plaintiff's work history, the Review Committee declined to recommend involuntary termination and instead recommended a transfer, which became effective in January of 1979. Def. Ex. 12.

Although plaintiff's work performance apparently improved after this transfer, there was a continuing concern about the amount of work available for her in that section. Def. Ex. 19–21. In her performance evaluation for 1979, this lack of work was described as a "chronic problem" due to the limited demand for pure political science research. Def. Ex. 18 at 1.

In 1980, however, the demand for plaintiff's research skills increased markedly and her time on sponsored projects increased as a result. This increase was due almost entirely to her participation in "Stage II" of the Central Arizona Water Control Study ("CAWCS"). Def. Ex. 25–26; Taylor Depo. at 67–73. Despite this increase, however, plaintiff was specifically advised at the beginning of 1981 that her workload was not satisfactory due to the continuing lack of demand for her skills. Def. Ex. 24.

In January of 1981, plaintiff's section manager prepared a section plan which did not designate plaintiff as a "key staff" member in any of the section's five substantive areas. Def. Ex. 28. In fact, plaintiff's name appeared only once in this document, under the heading of "other support staff" for one specific area. *Id.* at 41. In this regard, the Court notes that Westi deHaven-Smith, who was eventually terminated at approximately the same time as plaintiff, was also named in only this one staff category. *Id.*

In February of 1981, plaintiff's section began to implement Stage III of CAWCS. Plaintiff was not included in the draft work plan for Stage III as submitted to the client; in fact, only Cindy Richmond was identified as a major contributor, with Ellen Ramlet as a consultant or reviewer. Def. Ex. 30 at 3. The record indicates that plaintiff was fully aware in February of 1981 that only Richmond was assigned to Stage III. Def. Ex. 52 at 1, ¶ 8.

At approximately the same time as plaintiff's work on Stage II was completed, defendant began to implement a reduction-in-force ("RIF") due to economic and other outside factors. Def. Ex. 33–34. Plaintiff and three other individuals from her section, including deHaven-Smith, were identified by their department manager as possible candidates for termination because they were "Policy Planners/Political Scientists" who were "not key to the Department" and "easily replaced." Def. Ex. 35 at 1.

In March of 1981, plaintiff's department manager identified five (5) researchers, including plaintiff, who were in a "lack of work" situation, i.e., whose average time on projects for the previous nine (9) month period was ten (10) percentage points less than the department average at that level. Def. Ex. 38. Of these five individuals, only plaintiff and Joanne Gilbert were recommended for termination because of "deteriorating" time on projects. *Id.* at 2; Def. Ex. 39. The other three individuals were identified as "improving" or on "hold" due to specific project assignments. *Id.*

Based upon these determinations, plaintiff's department manager recommended four researchers at plaintiff's level for termination on April 3, 1981. Plaintiff and Gilbert were recommended for termination due to the lack of work, and deHaven-Smith and Laura Morgan were recommended for termination due to the "elimination of [their] technical area." Def. Ex. 39 at 1. To implement the RIF, Gilbert (age 28), deHaven-Smith (age 33), and Morgan (age 28) were all put on notice of their pending termination. Def. Ex. 40. Plaintiff, however, was not put on formal notice of termination. Rather, as required by Battelle's employment guidelines, plaintiff was given informal notice and was told that her case would be submitted to the Review Committee while a search was conducted within Battelle for alternative employment. *Id.; see* Def. Ex. 41–43.

Shortly thereafter, plaintiff met with a senior personnel advisor to discuss her employment alternatives at Battelle; at that time, plaintiff asked to be considered for three (3) open positions: (1) Documentation Specialist; (2) Senior Writer; and (3) Technical Editor. The first position was eventually cancelled, and plaintiff was not transferred to either of the other positions because the supervisors indicated that she was not properly qualified. Def. Ex. 44, 45, 61, 62 & 63; *see also* Def. Ex. 64 (Resume of individual hired as technical editor).

Plaintiff also asked the senior personnel advisor to investigate four (4) possible areas of interest for her: (1) Paralegal; (2) Conference Coordinator; (3) Training Specialist; and (4) Home Renovation Contractor. Def. Ex. 41. After contacting the appropriate personnel in these areas, the personnel advisor determined that there were no anticipated openings for plaintiff. *Id.*

At the end of April 1981, the Review Committee began a series of meetings to consider plaintiff's case. The possibility of "bumping" existing personnel was considered and rejected on the grounds that plaintiff lacked equal qualifications. Def. Ex. 48. The Review Committee determined that deHaven-Smith and Morgan, both of whom had already been terminated, were within plaintiff's peer group in terms of academic skills and productivity and that the individuals who remained in her section all possessed skills which plaintiff simply did not have. *Id; see also* Def. Ex. 49. Furthermore, the Review Committee concluded that the consistent lack of demand for plaintiff's skills was "unacceptable from a financial requirements standpoint." *Id.*

On May 7, 1981, plaintiff was invited to meet with the Review Committee to discuss her past assignments and the current lack of work in her section. The minutes of that meeting indicate that plaintiff provided extensive information about her work assignments and the lack of work for her in her section. Def. Ex. 50; *see also* Def. Ex. 56. Plaintiff received a copy of these minutes, upon which she made some clarifying remarks. Def. Ex. 51. Her notated copy was then returned to the Review Committee along with a memorandum which purports to be plaintiff's summary of the meeting. Def. Ex. 52.

Shortly thereafter, the Review Committee met again and considered at length the allegations made by plaintiff at the prior meeting and in her written summary. Def. Ex. 53. Finally, on May 15, 1981, the Review Committee unanimously agreed to recommend plaintiff for "involuntary separation notice with pay" due to the lack of work in her section. Def. Ex. 54. The Review Committee specifically concluded as follows:

[T]here are no other current positions open in the Columbus Laboratories to which she can be reassigned. Also there are no support level positions in her section and department where she can appropriately replace less senior staff members currently holding such positions. The Committee also recommends that the internal search for another position for Mrs. Taylor be continued during her 20 weeks of notice time.

Def. Ex. 54 ¶ 2. Battelle's Director approved this recommendation on May. 21, 1981. Def. Ex. 57.

Plaintiff received her written "Involuntary Termination Notice" on June 3, 1981. Def. Ex. 59. As of June 4, 1981, plaintiff was on "notice time" for 100 working days, through October 23, 1981. *Id.* During that time, plaintiff received full salary but was "relieved of all Battelle duties in order to conduct a search for other employment." *Id.* at 1, ¶ 4.

As part of this search, plaintiff testified on deposition that she read Battelle's publication, the "Current," for information on job openings. Taylor Depo. at 133. However, plaintiff filed only one request for consideration during her twenty weeks of notice time. Def. Ex. 66. Plaintiff requested that she be considered for a Senior Writer position, but this request was denied on the grounds that she lacked the requisite education and experience. *Id.; see also* Def. Ex. 67 (Resume of individual hired as senior writer).

Having failed to find alternative employment within Battelle, plaintiff was terminated on October 23, 1981. Thereafter, on December 28, 1981, plaintiff filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff filed this civil action on June 16, 1983.

## II. *Discussion*

### A. *Statute of Limitations*

Pursuant to Section 7(a) of the ADEA, the statute of limitations set forth in 29 U.S.C. § 255(a) applies to all ADEA actions. Section 255(a) provides that "every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."

It is now well settled that a cause of action under the ADEA "accrues when [the employee] receives a notice of termination, not when his employment actually ceases." *Janikowski v. Bendix Corp.,* 823 F.2d 945, 947 (6th Cir.1987). Thus, despite continuing employment or an ongoing search for other employment, an employee's cause of action accrues when he receives notice of termination. *Id.; see also Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981); *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). This general rule, however, is not applicable if there is an ongoing discriminatory policy on behalf of the defendant employer. *See Held v. Gulf Oil Co.,* 684 F.2d 427 (6th Cir.1982). In such situations, the "continuing violation" doctrine applies and the cause of action does not accrue until the last discriminatory act occurs.

In this case, plaintiff admits that she received formal notice of termination on June 3, 1981. In her memorandum contra, however, plaintiff appears to argue that this was only a "conditional" notice of termination and that this cause of action did not accrue until she was actually terminated on October 23, 1981. Given that the Sixth Circuit expressly rejected an identical argument based upon an allegedly "conditional" termination in *Janikowski,* the Court is not persuaded by plaintiff's contention.

In a related argument, plaintiff vaguely contends that there was an ongoing policy of discrimination on the basis of age and that her cause of action did not accrue until the last discriminatory act alleged. Plaintiff, however, fails to identify any evidence to establish such an ongoing policy. *See* Plaintiff's Memo at 33. Having reviewed the record, the Court has discovered only three potentially admissible statements which might establish the existence of such a discriminatory policy.

In her deposition, plaintiff stated that a project director, Shasi Gupta, told her in the spring of 1981 that "[h]e had been told that the RIF was going to be used to get rid of older personnel that were not as aggressive as they should be and [they would be] replaced with younger people." Taylor Depo. at 114. In addition, plaintiff testified that two other employees, Mr. Simpson and Mr. Murdock, told her in the 1970's that a project that she had been removed from was "being cleansed of all older personnel" and that the older personnel would be "replaced by aggressive, younger personnel." *Id.* at 115. However, it appears that these statements are inadmissible hearsay under Rules 801(c) and 802 of the Federal Rules of Evidence. *See also* Fed.R.Civ.P. 56(e).

Apparently, plaintiff believes that these statements are admissible as party admissions under Rule 801(d)(2)(D). However, such statements are admissible only if they concern "a matter within the scope of [the speaker's] agency or employment...." Fed.R.Evid. 801(d)(2)(D). In employment discrimination cases, the Sixth Circuit has held that statements made concerning the reasons for an employee's discharge are within the scope of the speaker's employment *only* if the speaker was involved in the discharge decision. *Hill v. Spiegel, Inc.,* 708 F.2d 233, 237 (6th Cir.1983). Statements by co-workers are, therefore, generally inadmissible hearsay because those individuals were not involved in the termination decision. *See, e.g., Cebula v. General Electric Co.,* 614 F.Supp. 260, 266 (N.D.Ill.1985). Furthermore, the party offering such statements bears the burden of establishing a proper foundation for admissibility. *Mitroff v. Xomax Corp.,* 797 F.2d 271, 275 (6th Cir.1986).

In this case, plaintiff has completely failed to establish that Simpson, Murdock, or Gupta had any responsibility with respect to her termination. Rather, these statements appear to have been made by sympathetic co-workers who were in no way involved with the termination decision. Furthermore, the Court notes that the statement by Shasi Gupta is in fact double hearsay because plaintiff testified that Gupta said that "[h]e had been told...." Taylor Depo. at 114. Given the complete absence of any foundation for the admissibility of these statements as party admissions under Rule 801(d)(2)(D), the Court concludes that these statements are inadmissible hearsay under Rule 802.

The only other possible evidence which might establish an ongoing policy of discrimination would be the statistics of the RIF. If the statistics establish that employees in the protected class were terminated in greater numbers, then plaintiff may have established an ongoing violation of the ADEA. The statistics in this case, however, establish just the opposite.

Of the 31 Battelle employees terminated in 1981 due to lack of work, only six (19.3 percent) were age 40 or older, and only plaintiff was older than 45. Granger Aff. at ¶ 4. As of December 31, 1981, after the RIF, defendant's salaried staff had decreased by 7.2 percent. *Id.* at ¶ 6. However, the proportion of employees age 40 or older had actually increased and the proportion of persons age 55 or older had remained the same. *Id.* Within plaintiff's department, the percentage of employees age 40 or older decreased only 0.7 percent, while the percentage of employees age 55 or older actually increased by 1.6 percent. *Id.* at ¶ 7. These statistics completely fail to establish that the RIF was used by Battelle to discriminate against members of the protected class. Rather, it appears that members of the protected class were treated favorably during the RIF.

Having determined that there is no admissible evidence to establish an ongoing policy of discrimination, the Court concludes that plaintiff has completely failed to establish an ongoing violation of the ADEA. Accordingly, the Court finds that the continuing violation doctrine does not apply in this case. For purposes of the statute of limitations, therefore, the Court finds that plaintiff's initial cause of action accrued on June 3, 1981, when she received formal notice of termination. Plaintiff's claims regarding failure to place her into other job positions accrued thereafter.

As noted above, this action was filed on June 16, 1983, more than two years after plaintiff's initial cause of action accrued. Accordingly, plaintiff's termination claim and several of her other claims can be considered timely only if defendant willfully violated the ADEA, thereby implicating the three-year statute of limitations. Otherwise, these claims are barred by the applicable two-year statute of limitations. 29 U.S.C. § 255(a).

Although neither the Supreme Court nor the Sixth Circuit has defined willfulness for purposes of the statute of limitations in ADEA cases, the Supreme Court has defined willfulness in an analogous situation, the application of liquidated damages in ADEA cases. *See* 29 U.S.C. § 626(b). In *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985), the Supreme Court adopted an objective definition of willfulness and held that an employer acts willfully if it knows or shows "reckless disregard for the matter of whether its conduct [is] prohibited by the ADEA." Shortly after *Thurston*, the Seventh Circuit concluded that this objective standard should also be used to define willfulness for purposes of the statute of limitations. *Walton v. United Consumers Club, Inc.*, 786 F.2d 303 (7th Cir.1986); *see also Brock v. Richland Shoe Co.*, 799 F.2d 80, 83 (3rd Cir.1986).

■ The Court believes that the analysis adopted by the Seventh Circuit in *Walton* is entirely correct. *See E.E.O.C. v. Firestone Tire & Rubber Co.*, 650 F.Supp. 1561, 1565–66 (W.D.Tenn.1987). Accordingly, the Court concludes that plaintiff must establish that defendant "knowingly violated or acted in reckless disregard of the ADEA in order to classify the defendant's actions as willful, thereby implicating the three-year statute of limitations." *Id.* at 1566.

■ In an effort to establish knowledge or reckless disregard on behalf of Battelle, plaintiff offers only one potentially admissible statement by Shasi Gupta. In her deposition, plaintiff testified that she "was told by [Gupta] that [an associate section manager] had come to him and others and told him—told them not to use [her on any

projects]." Taylor Depo. at 112. As discussed in detail above, this statement by Gupta is admissible only if it is a party admission under Rule 801(d)(2)(D). It appears to the Court that this statement may have been within the scope of Gupta's employment because he had the authority to include various personnel on his projects. The Court finds, therefore, that this statement is admissible to establish that Gupta was, at some unidentified point in time, told not to put plaintiff on any of his projects.

■ However, the Court does not believe that this isolated statement establishes that defendant willfully discriminated against plaintiff is violation of the ADEA. Plaintiff admitted in her deposition testimony that she has absolutely no idea when Gupta was told not to put her on any of his projects; it is clear, however, that Gupta did not make his statement to plaintiff until *after* she had been identified as a candidate for the RIF. Taylor Depo. at 113–12. Furthermore, plaintiff has offered nothing to establish that the statement to Gupta was related to her age in any way. The isolated fact that Gupta was told not to use plaintiff on his projects simply does not establish that her age prompted an associate section manager to make such a statement to Gupta.

In addition, the record does not support the inference that Gupta actually failed to include plaintiff on any project proposals as a result of the statement to him. Although plaintiff testified in her deposition that Gupta asked for her "bio" to be entered into a proposal, plaintiff readily admitted that she does not know of any project proposal in which Gupta might have included her. *Id.* at 113. The Court finds, therefore, that there is no evidence to establish that Gupta actually omitted her from a project proposal.

In the absence of such evidence, the isolated party admission simply does not support the asserted inference that Battelle knowingly violated or acted in reckless disregard of the ADEA. The Court finds, therefore, that plaintiff has completely failed to establish a willful violation of the ADEA. Accordingly, the three-year stat-

ute of limitations is not applicable in this case and it appears that all of plaintiff's claims which accrued before June 6, 1981 are barred by the applicable statute of limitations.

■ In an alternative argument, plaintiff contends that none of her claims are barred because the facts mandate equitable tolling of the two-year statute of limitations. Initially, plaintiff contends that the limitations period was tolled while the EEOC attempted to effect voluntary compliance. 29 U.S.C. § 626(e)(2). However, this argument is not supported by the language of the ADEA and it has been repeatedly rejected by the courts. *See, e.g., Heiar v. Crawford County*, 746 F.2d 1190, 1196 (7th Cir. 1984), *cert. denied*, 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985).

In a second argument in favor of equitable tolling, plaintiff contends that she was misled by Battelle as to the continuation of State III of CAWCS and Richmond's work thereon. Specifically, plaintiff contends that she did not know until October that the project had continued after December of 1980. Taylor Depo. at 147–48. However, plaintiff's *own* memorandum dated May 7, 1981, states that Richmond was working on the "Arizona" project, i.e., CAWCS, in February 1981. Def. Ex. 52 at 1, ¶ 8. It is, therefore, difficult to understand how plaintiff can now contend that she was misled.

Furthermore, even if plaintiff was misled as to the continuation of CAWCS, plaintiff clearly knew as a result of the Review Committee meetings that she had no other anticipated work within her section. The existence of one project does not constitute the type of "active fraud and blatant misrepresentation" which would have induced plaintiff not to file a claim for age discrimination with respect to her termination. *Klausing v. Whirlpool Corp.*, 623 F.Supp. 156, 162 (S.D.Ohio 1985). Therefore, the Court does not believe that reasonable jurors could find that defendant engaged in the type of misrepresentation sufficient to toll the statute of limitations.

In conclusion, the Court finds that plaintiff's cause of action with respect to her termination accrued on June 3, 1981; that the two-year statute of limitations is applicable; and that equitable tolling is not appropriate. The Court concludes, therefore, that all of plaintiffs' claims which accrued before June 16, 1981 are barred by the statute of limitations and that defendant is entitled to judgment as a matter of law on these claims. However, plaintiff's claims regarding job positions available on or after June 16, 1981 are not barred by the statute of limitations; these claims must be considered on the merits.

### B. *Specific Claims Under the ADEA*

As discussed above, the Court believes that the majority of plaintiff's claims are barred by the applicable two-year statute of limitations. However, given that defendant has presented its motion for summary judgment in the alternative, the Court believes that it is appropriate to consider the merits of all of plaintiff's allegations under the ADEA.

In ADEA actions, the ultimate issue is whether age was a determining factor in the alleged adverse employment action. *See Merkel v. Scovill, Inc.*, 787 F.2d 174, 177 (6th Cir.), *cert. denied*, — U.S. —, 107 S.Ct. 585, 93 L.Ed.2d 587 (1986); *Blackwell v. Sun Electric Corp.*, 696 F.2d 1176, 1179 (6th Cir.1983). In making this determination, the Court is mindful that the burden of proof must be allocated according to the tripartite analysis adopted by the Supreme Court in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *Blackwell*, 696 F.2d at 1180. However, the Sixth Circuit has expressly rejected a "mechanical" application of the evidentiary standards enumerated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); although the *McDonnell Douglas* criteria may be considered relevant in a given case, the Sixth Circuit has held that all ADEA actions must be reviewed on a "case by case basis." *Sahadi v. Reynolds Chemical*, 636 F.2d 1116, 1118 n. 3 (6th Cir.1980).

Under the *McDonnell Douglas* approach, a plaintiff must establish four essential elements:

(1) That he was a member of the protected class (age 40 to 70);

(2) That he was subjected to adverse employment action;

(3) That he was qualified for the position; and

(4) That he was replaced by a younger person or that a younger person was selected.

*See Simpson v. Midland–Ross Corp.*, 823 F.2d 937, 940 (6th Cir.1987). Proof of these four elements or other direct or statistical proof establishes a prima facie case and creates a rebuttal presumption of discrimination. Under *Burdine*, the burden of production then shifts to the defendant employer to articulate a legitimate nondiscriminatory reason for the action taken. If the defendant employer meets this burden, then the plaintiff bears the burden of establishing that the proffered reason is mere pretext for the employer's discriminatory intent. *See Ridenour v. Lawson Co.*, 791 F.2d 52, 55–57 (6th Cir.1986).

### 1. *Termination/Replacement*

██ Plaintiff initially claims that she was unlawfully terminated and replaced by Cindy Richmond on Stage III of CAWCS. At the time of the alleged termination/replacement, Battelle was unquestionably implementing a RIF. The Sixth Circuit has repeatedly held that an "ADEA plaintiff who has been terminated amidst a corporate reorganization carries a greater burden of supporting charges of discrimination...." *Ridenour*, 791 F.2d at 57. Such a plaintiff must also "come forward with additional direct, circumstantial, or statistical evidence that age was a determining factor in his termination." *Id.; see also Simpson*, 823 F.2d at 941. It is clear, therefore, that a prima facie case cannot be established simply by proving that a younger person with equal or better qualifications was retained. *Sahadi*, 636 F.2d at 1116.

██ In this case, defendant does not deny that plaintiff was a member of the protected class; that she was not included in Stage III of CAWCS; that she was terminated; or that a younger employee (Richmond) was retained. However, defendant specifically denies that Richmond "replaced" plaintiff. Rather, defendant contends that Richmond was the *only* employee actually assigned to Stage III of CAWCS. Furthermore, defendant contends that Richmond possessed certain skills which plaintiff did not possess and which were vital to Stage III of CAWCS. The record before the Court completely supports these factual allegations. *See* Def. Ex. 31. Accordingly, the Court does not believe that there is a genuine issue of material fact on the replacement claim.

██ Even if Richmond did replace plaintiff on Stage III of CAWCS, the Court does not believe that plaintiff has offered any "direct, circumstantial, or statistical evidence" that age was a determining factor in her replacement or termination. Although plaintiff contends in her memorandum contra that she has "direct evidence" of discrimination, she offers only the inadmissible hearsay statements of her coworkers and the party admission by Gupta. For the same reasons articulated above, the Court does not believe that Gupta's statement *by itself* is sufficient to establish that age was a determining factor in her replacement or termination. Furthermore, it is clear that the statistics from the RIF do not support any inference of discrimination against plaintiff or other members of the protected class.

In the absence of any other direct, circumstantial, or statistical evidence, the Court does not believe that reasonable jurors could find that plaintiff has established a prima facie case of discrimination. Furthermore, even if Gupta's unsupported statement was sufficient to establish a prima facie case, it is clear that plaintiff has offered nothing to rebut the multitude of evidence which defendant has offered to establish that plaintiff was justifiably terminated as part of the RIF. Accordingly, the Court does not believe that reasonable jurors could find that the proffered reason was mere pretext. Summary judgment is,

therefore, entirely appropriate on plaintiff's termination/replacement claim.

### 2. *Failure to Consider/Transfer*

In her remaining claims, plaintiff alleges that defendant discriminated against her on the basis of age by failing to consider her for or transfer her to other job openings at Battelle. Although it is undisputed that she submitted only four (4) requests for consideration, plaintiff now contends that defendant discriminated against her with respect to at least twenty other job vacancies filled by younger applicants during her notice time. In response, defendant contends (1) that plaintiff failed to apply for most of these job vacancies and (2) that plaintiff was not qualified for any of these positions, regardless of whether she applied.

■ The parties clearly dispute whether plaintiff had the burden of submitting an application for job openings during her notice time. Given that the Review Committee specifically directed the continuation of an employment search during her notice time, the Court believes that it is reasonable to infer that plaintiff should have been considered for every job vacancy at Battelle. Thus, the Court believes that plaintiff "constructively applied" for job openings during her notice time. However, even if defendant negligently failed to consider her for those job positions, such negligence by itself does not establish a claim under the ADEA. Plaintiff still bears the burden of establishing that age was a determining factor in these employment decisions.

Even if the Court infers that plaintiff actually or constructively applied for each of the available job positions, that fact alone does not establish a prima facie case of age discrimination. Rather, plaintiff must also establish that she was qualified for these positions. Defendant contends that plaintiff lacked the requisite qualifications for any of these positions. The factual record before the Court supports defendant's contention. *See* Def. Ex. 44, 45, 61, 62, 63, 66, 67 & 69. Even plaintiff admitted in her deposition testimony that there was only one job vacancy for which she

was obviously qualified because it required an M.A. in Political Science. Taylor Depo. at 133–36. Based upon this record, it appears to the Court that plaintiff has established a prima facie case of age discrimination with respect to only that one vacancy.

■ However, even if plaintiff has established a prima facie case with respect to each of these vacancies, the Court believes that defendant has articulated a legitimate reason for not considering or transferring plaintiff to those vacancies. With respect to the majority of these positions, including the one for which plaintiff was obviously qualified, defendant contends that she was not considered because she did not file a formal request for consideration. While it may have been negligent not to consider plaintiff for job vacancies while she was on notice time, mere negligence does not establish discriminatory intent. Rather, plaintiff bears the burden of establishing pretext. Having reviewed the evidence at length, the Court believes that plaintiff has completely failed to present any admissible evidence to rebut defendant's articulated reason with respect to these positions.

Finally, with respect to the positions for which plaintiff actually applied, defendant contends again that the people hired for those positions were better qualified. Plaintiff has failed to establish that she was even *equally* qualified, let alone *better* qualified, for these positions. In light of this, the Court believes that plaintiff has again failed to establish pretext. Accordingly, the Court finds that defendant is entitled to summary judgment on all of these claims because reasonable jurors could not find for plaintiff on the evidence presented.

### III. *Conclusion*

Having carefully reviewed the multitude of evidence presented in support of and in opposition to this motion, the Court believes that the majority of plaintiff's claims are barred by the applicable two-year statute of limitations. Furthermore, even if all of plaintiff's claims were timely filed, the Court does not believe that a fair-minded jury could find for plaintiff on the evidence

presented. Rather, it appears that plaintiff received favorable treatment far beyond what is required by the ADEA. While defendant may have negligently executed its job search for plaintiff during her notice time, there is absolutely no indication that such negligence was related to plaintiff's age. Defendant is, therefore, entitled to summary judgment on all of plaintiff's claims under the ADEA.

WHEREUPON, upon consideration and being duly advised, the Court finds that defendant's motion for summary judgment is meritorious and it is, therefore, GRANTED. This case is hereby DISMISSED in its entirety.

IT IS SO ORDERED.