Michael **CHERRY**, Plaintiff,

v.

**THERMO ELECTRON CORPORATION,
a Delaware corporation, Defendant.**

No. 91–74477.

United States District Court,
E.D. Michigan, S.D.

July 8, 1992.

Joseph L. Konheim, Southfield, Mich., for plaintiff.

George Mesritz, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

EDMUNDS, District Judge.

This matter has come before the Court upon Defendant's motion for summary judgment. Plaintiff, Michael Cherry, is a former employee of the Crusader Engine Division of Defendant, Thermo–Electron. Defendant terminated Cherry in 1990, and Cherry brought this suit claiming that Defendant discriminated against him based on his age and breached his employment contract. The undisputed facts establish that

Defendant terminated Cherry as part of a reduction in force resulting from an economic downturn. Further, there is no evidence that Cherry was discriminated against due to his age. As a result, Defendant's motion for summary judgment is hereby granted for the reasons stated in this opinion.

## I. Facts

Cherry was first employed by Thermo Electron in 1965 as a Service Manager. He was laid off in 1969 and went to work as a service manager for a collision shop. In 1971, Walter Wetzel (then the president of Crusader Engines) asked Cherry to return to work at Crusader Engines. Wetzel indicated to Cherry that any termination or layoffs would be based on good cause and seniority. (Cherry 173, 192, 194)[1] Cherry accepted the offer of renewed employment and worked in the engineering department at Crusader Engines until October 1990.

In 1988, Defendant transferred Cherry to a newly created position entitled Senior Applications Engineer. At the time, Cherry was 60 years old. While there is some dispute as to the motivation for the transfer, Cherry testified that Defendant's president, Mr. Janssens, told Cherry at this time that the company wanted a younger person as service manager, (Cherry 29–31) and that Thermo Electron hired Mr. Johnson, a younger, less-experienced man, for the position formerly held by Mr. Cherry.

Although sales and net income had decreased somewhat in 1988, the company did not appear to be in significant financial trouble at that time. Crusader Engines projected in its Five Year Budget in May, 1989 that sales would increase from $39.3 million in 1988 to 44.6 million in 1989; the company made a profit every year from 1985 through 1989. (Meganck Affidavit) In the fall of 1989, however, Yamaha, a major customer of Crusader Engines, changed the number of engines "on order" to a "limited quantity," resulting in a shut down of the production of engines for Yamaha. (Scott 142) At that time the Defen-

dant laid off both union and salaried employees, not including Cherry.

In 1990, Defendant's sales and order backlog fell, and the company suffered a severe economic downturn. Crusader Engines' sales declined from $39.3 million in 1988 to 19.1 million in 1990, a 51.4% reduction in sales. (Affidavit of Ronald Meganck, controller) Crusader Engines laid off Cherry in October 1990 during the second round of layoffs necessitated by the company's worsening economic condition. Cherry was one of 70 union and salaried employees laid off by Defendant in 1989 and 1990 out of a total work force of 180; he was one of 14 salaried employees laid off during the same time period out of a total of 60 salaried employees. (Affidavit of Carol Dalton, personnel manager) Of the 60 salaried employees, 28 or 46.7% were over 40–years–old; of the 14 salaried employees laid off, 6 or 42.9% were over 40–years–old. Cherry's position as Senior Applications Engineer was eliminated in the reduction-in-force, and he was not replaced. (Cherry 70–71; Scott Affidavit)

As a result of his termination, Cherry filed a claim of age discrimination with the Equal Employment Opportunity Commission, claiming that he had a just cause contract which had been violated and that his transfer was part of Defendant's long-term plan to discharge him due to his age. The EEOC determined that Cherry's claim was without merit. Cherry then brought this suit alleging age discrimination and breach of contract. Defendant has moved for summary judgment.

## II. Summary Judgment Standard

In considering a motion for summary judgment, the Court may grant the motion only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). As the Supreme Court ruled in *Celotex*, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a show-

---

1. The executive vice president of Crusader Engines, Gerald Scott, stated in his deposition that he used a just cause policy for terminations. (Scott 63–64)

ing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The court must view the allegations of the complaint in the light most favorable to the non-moving party. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir. 1983). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 265, 106 S.Ct. 2505, 2519, 91 L.Ed.2d 202 (1986).

However, the mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant. *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512.

### III. Age Discrimination in Termination
### A. Standards for Prima Facie Case

In an age discrimination case, the plaintiff has the burden of proving a prima facie case. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). A claimant may prove a prima facie case by bringing forth credible, direct evidence of discriminatory intent. *Terbovitz v. Fiscal Ct. of Adair Cnty.,* 825 F.2d 111 (6th Cir.1987). Where a plaintiff presents no direct evidence of discrimination, he may prove a prima facie case by showing the following:

1) he was a member of a protected class, i.e. he was over 40;

2) he was discharged;

3) he was qualified for the position; and

4) he was replaced by a younger person. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. The same standards and burdens apply to cases brought under the Elliott–Larsen Civil Rights Act, M.C.L.A. §§ 37.2101–.2803. *Jenkins v. American Red Cross,* 141 Mich.App. 785, 793, 369 N.W.2d 223, 227 (1985).

### B. The 1988 Transfer Was Not Discriminatory

In 1988, Cherry was transferred from his position as Service Manager to a newly created position entitled Senior Applications Engineer. Cherry contends that he was transferred in 1988 due to his age, and that direct evidence including the age animus statement by Mr. Janssens and the hiring of a younger man as his replacement supports the claim that the transfer was discriminatory.[2] Defendant responds that Cherry was transferred due to his own complaints of job stress and the company's need for his expertise in the new position.

As a preliminary matter, Cherry has not demonstrated that his 1988 transfer was an adverse employment decision. Even though the reasons for Plaintiff's transfer are disputed, it is undisputed that Cherry did not lose any salary or benefits, did not change his job location, and did not suffer any other adverse consequences due to the transfer. (Cherry 32) Because Cherry did not suffer any adverse impact as a result of his transfer, he cannot establish a prima facie case of discrimination based on that employment decision. *Yates v. Avco Corp.,* 819 F.2d 630, 638 (6th Cir.1987) (plaintiff failed to show adverse employment action, and thus failed to prove prima facie case of discrimination, where after alleged discriminatory transfer plaintiff received same pay and benefits); *Darnell v.*

---

**2.** Plaintiff also claims that another employee and a purchasing agent told Plaintiff that he was being phased out because of his age (Cherry 48–51), and another former employee of Defendant, David Partridge, claims that Defendant transferred Cherry in an attempt to move him out of the company, Partridge Affidavit. Mr. Partridge also alleges that *he* was discriminated against. (Partridge Affidavit) These allegations are not probative of whether or not Defendant discriminated against Plaintiff due to his age.

Only statements by those with personal knowledge who were involved in Plaintiff's discharge are relevant to this issue. *Hill v. Spiegel Inc.,* 708 F.2d 233, 236–37 (6th Cir.1983) (reversible error to admit testimony of managers' animus statements, because managers were not involved in employment decision); *Chappell v. GTE Products Corp.,* 803 F.2d 261, 268 (6th Cir.1986) ("Mere personal beliefs, conjecture and speculation are insufficient to support an inference of discrimination").

*Campbell Cnty. Fiscal Ct.,* 731 F.Supp. 1309 (E.D.Ky.1990) (same), *aff'd without op.,* 924 F.2d 1057 (6th Cir.1991).

### C. The 1990 Discharge Was Not Discriminatory

 Cherry claims that Defendant discriminated against him based on his age by discharging him in 1990. Defendant asserts that Cherry was discharged as part of a nondiscriminatory reduction in force necessitated by a severe economic downturn.

In a reduction in force case, a plaintiff must present "additional direct, circumstantial or statistical evidence that age was a factor in his termination in order to establish a prima facie case." *LaGrant v. Gulf & Western Mfg. Co., Inc.,* 748 F.2d 1087, 1091 (6th Cir.1984). *See Matras v. Amoco Oil Co.,* 424 Mich. 675, 385 N.W.2d 586 (1986) (plaintiff may prove discrimination by direct evidence showing age was a determining factor). Such additional direct evidence may include facts showing that management favored younger workers, tended to fire older workers, or somehow disfavored older workers. *Id.*

The mere fact that younger workers are retained in positions that plaintiff is qualified for does not prove discrimination. *Sahadi v. Reynolds Chem.,* 636 F.2d 1116, 1118 (6th Cir.1980). Further, an employer is not required to transfer an employee to another position when the employer lays off workers as part of a reduction in force. *Id.* at 1117.

Cherry's ultimate discharge was nondiscriminatory. The statistical analysis of the reduction in force establishes without dispute that Defendant did not favor younger workers, nor did it tend to fire or disfavor older workers in deciding who was to be laid off. Without some direct circumstantial or statistical evidence that age was a factor utilized by the Defendant in the layoff decisions, Plaintiff fails to establish the essential elements of his claim.

The Defendant did not discharge Cherry during its first round of layoffs in 1989,

occasioned by the reduction in the Yamaha engine order. The Defendant waited to discharge Cherry until 1990, after Crusader Engines' sales had fallen by more than fifty percent. Defendant discharged Cherry along with numerous other salaried and union employees; the company eliminated Cherry's position and thus did not replace him.[3] Cherry was one of 70 union and salaried employees laid off by Defendant in 1989 and 1990 out of a total work force of 180; he was one of 14 salaried employees laid off during the same time period out of a total of 60 salaried employees. (Affidavit of Carol Dalton, personnel manager) The statistics show that during the 1989–90 layoffs fewer than one-half of the workers laid off were over 40—of the 60 salaried employees, 46.7% were over 40–years–old; of the 14 salaried employees laid off, 42.9% were over 40–years–old. *Taylor v. Battelle Columbus Laboratories,* 680 F.Supp. 1165, 1171 (S.D.Ohio 1988) (statistics fail to establish discrimination; of 31 employees terminated during corporate reorganization, only 19.3% were age 40 or older).

Cherry argues that Defendant hired eight people to work in the engineering department during 1989 and 1990, implying that Defendant could have anticipated the need for layoffs and somehow found or saved a position for him. Cherry presents no evidence, however, that he was similarly situated to the new employees or that he was qualified for any of the positions for which these individuals were hired. In fact, Defendant stated the following in a letter to the EEOC:

> Before making reductions in our work force, we examined all employees as to their capabilities to perform the remaining required jobs. Mr. Cherry does not have the formal education nor experience with computers and emissions which are required for current and future engine development of our product lines....

Letter to EEOC dated June 10, 1991. Further, Defendant was not required to transfer Cherry to another position when it laid

---

**3.** Even when an employer eliminates an employee's position and discharges the employee, the employer may spread the employee's prior duties among remaining employees. This does not constitute replacement. *Lilley v. BTM Corp.,* 958 F.2d 746, 752–753 (6th Cir.1992).

off Cherry as part of a reduction in force. *Sahadi v. Reynolds Chem.*, 636 F.2d at 1117.

### D. The Transfer and The Discharge Were Separate Employment Decisions

■ Cherry further contends that Defendant had a long-term plan to terminate him, of which the transfer was merely a preliminary step, and that the discharge two years later was the culmination of the company's campaign of age discrimination. Defendant counters that the 1988 transfer and the 1990 discharge were entirely separate employment decisions.

The Seventh Circuit recently considered a similar case where the plaintiff claimed that a transfer which was not itself discriminatory was a prelude to a subsequent illegal discharge. The Court rejected plaintiff's claim, holding that plaintiff had failed to prove either that the transfer had an adverse impact or that the discharge was discriminatory. *Holmberg v. Baxter Healthcare Corp.*, 901 F.2d 1387 (7th Cir. 1990). The Court stated:

> Beyond [plaintiff's] speculation that the transfer was part of a scheme to end her employment at Baxter, she has not demonstrated how the transfer adversely affected her. Even accepting [plaintiff's] inference of the transfer as a gateway to her dismissal, the transfer still does not constitute evidence of age discrimination, because the ultimate dismissal itself was nondiscriminatory.

901 F.2d at 1391.

Like the plaintiff in *Holmberg*, Cherry did not suffer any adverse impact due to his transfer to a new position. In addition, Cherry failed to establish that his ultimate discharge was discriminatory. Moreover, Cherry failed to present evidence that the Defendant's decision to transfer him in 1988 was in any way related to the Defendant's decision to terminate him in 1990.

Even assuming that Mr. Janssens made the alleged discriminatory statement at the time Cherry was transferred, the statement was made in reference to the transfer and not the discharge. Cherry was discharged two years later. A statement so remote in time cannot support a claim for discrimination. *See, e.g., Sargent v. Internat'l Brotherhood of Teamsters*, 713 F.Supp. 999, 1017 (E.D.Mich.1989) (race animus statement three years before discharge insufficient to show discharge was discriminatory).

There is no evidence that Defendant schemed for two years to discharge Cherry. Cherry argues that his transfer was a sham because in 1988, at the time of the transfer, Defendant's sales decreased two million dollars and the company's net income correspondingly decreased. Given the decreased sales and net income, Cherry contends that it was unreasonable for Defendant to increase its overhead $53,650 by creating a new position for him and by hiring Mr. Johnson for his old position as service manager. Thus Plaintiff argues that such an unreasonable business decision creates an inference of a long-term plan to terminate him, based on his age.

This argument is without merit. Although in retrospect it may not have been the best business decision for Defendant to increase its overhead during a time of declining sales, it is undisputed that at the time Cherry was transferred, the Defendant was operating profitably and was not contemplating a reduction in force; the company made a profit every year from 1985 through 1989. (Meganck Affidavit) As late as seven months after the transfer, Defendant's projections showed increasing sales and net income over the next five years. *Id.* While the budget projections did not prove to be accurate, and Defendant ultimately decided to implement a reduction in force, there is no evidence in the record to support an inference of discriminatory intent with respect to Plaintiff.

### E. Plaintiff Failed to Establish a Prima Facie Case

■ The undisputed facts are consistent with the Defendant's position that it terminated Cherry as part of an economically motivated reduction in force. They do not support Plaintiff's claim of discrimination. Plaintiff has failed to present evidence

which would establish a prima facie case of discrimination [4]. Under *Celotex,* a court must grant summary judgment against a plaintiff "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." 477 U.S. at 322, 106 S.Ct. at 2552.

### IV. Breach of "Just Cause" Term of Contract

■ Cherry alleges that he had a just cause employment contract with Defendant, and that Defendant terminated him without just cause due to his age. Defendant argues that there was no just cause employment contract with Cherry,[5] and that even if there was, the company had just cause when it terminated Cherry for economic reasons.

One District Court has noted that a plaintiff alleging a discharge due to age animus may assert a claim for discrimination but may not rely on his discrimination claim to also support a claim for breach of a just cause contract. In *Parker v. Diamond Crystal Salt Co.,* 683 F.Supp. 168, 173 (W.D.Mich.1988), the court stated:

I recognize that an employer may attempt to use selective job elimination as a pretext for prohibited discrimination. However, an employee's remedy in such a situation lies in a suit under anti-discrimination statutes designed to compensate employees for discriminatory employment practices.

Thus, for Cherry to state a claim for breach of a just cause employment contract, Cherry must allege a breach independent of his age discrimination claim.

Even if one could read Plaintiff's complaint to allege a breach of contract independent of the claim for age discrimination, one is faced with the undisputed fact that Cherry was discharged due to an economically necessitated reduction in force. Such a reduction in force constitutes just cause under Michigan law. *McCart v. J. Walter Thompson USA, Inc.,* 437 Mich. 109, 469 N.W.2d 284 (1991) (where defendant produces undisputed evidence that plaintiff was terminated pursuant to work force reduction necessitated by economic conditions, there is no issue of fact to be litigated and summary judgment should be granted). Thus, Defendant is entitled to summary judgment on Plaintiff's claim for breach of contract.

### V. Breach of Seniority Term of Contract

■ Cherry also alleges that Defendant terminated him in violation of a seniority provision in the employment contract. To determine the validity of an alleged seniority contract, a court must examine three factors: (1) the terms of the employer's written policy; (2) the employer's practices in implementing the reduction in force; and (3) statements made to

---

**4.** If Plaintiff had established a prima facie case, the burden would shift to Defendant to prove a legitimate, nondiscriminatory reason for the discharge. Then, the burden would shift back to Plaintiff to show that the Defendant's reason was a mere pretext. *Burdine,* 450 U.S. at 253–56, 101 S.Ct. at 1093–95. "[A] plaintiff must take the extra step of presenting evidence to show that the reasons given are an attempt to cover up the employer's alleged real discriminatory motive." *Irvin v. Airco Carbide,* 837 F.2d 724, 726 (6th Cir.1987). Even if Plaintiff had proven a prima facie case, Defendant has proved a legitimate, nondiscriminatory reason for the discharge (i.e. the reduction in force), and Plaintiff failed to present evidence that Defendant's reason was a pretext.

**5.** Thermo Electron claims that there was no just cause contract because it has had a written at-

will employment policy since September 1989. This policy was in effect at the time of Cherry's termination. Even so, Cherry indicated that he was not made aware of it, Cherry 175, and thus it was ineffective to unilaterally modify his just cause contract. *Bankey v. Storer Broadcasting Co.,* 432 Mich. 438, 443 N.W.2d 112 (1989).

Thermo Electron also argues that there was no just cause contract because the statements made to Mr. Cherry were not the type of clear and unequivocal statements that would give rise to a just cause contract. *Rowe v. Montgomery Ward & Co., Inc.,* 437 Mich. 627, 473 N.W.2d 268 (1991). Because it is undisputed that Thermo Electron dismissed Cherry for just cause, i.e. as a result of an economically motivated reduction in force, for the purpose of this opinion this Court assumes, without deciding, that Plaintiff had a valid just cause contract.

the employee regarding seniority. *Boynton v. TRW, Inc.*, 858 F.2d 1178, 1184–85 (6th Cir.1988). In *Boynton*, the employer's written policy noted that seniority was the least important factor considered in layoffs. Some layoffs had been based on seniority, but others had not. The plaintiff alleged that he understood that the employer had a seniority policy based on forty years of experience and discussions with those in management positions. The Sixth Circuit concluded that this evidence did not establish a seniority contract. *Accord Massa v. Eaton Corp.*, 112 Lab.Cas. (CCH) P 56,080, 1989 WL 101914 (W.D.Mich.1989) (where employer had no written policy concerning seniority, some layoffs based on seniority and other not, plaintiffs' subjective understanding of seniority policy based on vague and distant statements, no seniority contract was established).

Cherry cannot establish the existence of a seniority contract under the factors set forth in *Boynton*. Defendant has a written at will employment policy. Meganck Affidavit. Defendant did not follow seniority when it laid off workers in 1989 and 1990. Cherry knew that Defendant was not following seniority in layoffs, because Cherry learned in 1989 that Defendant laid off Anthony Klos despite the fact that Mr. Klos had more seniority than remaining employees. Cherry 191. Cherry argues that he had a seniority contract because in 1971 Mr. Wetzel told him that layoffs would be based on seniority. This one statement, made to Cherry almost twenty years before his layoff, is too vague and distant to establish a valid seniority contract. Since Cherry has failed to present evidence of a seniority contract, Defendant is entitled to summary judgment on Cherry's claim for breach of a seniority contract.

### Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is hereby GRANTED.